STATE OF NORTH CAROLINA v. MACK LEE NICHOLS

No. 385A86

(Filed 9 March 1988)

**1. Criminal Law § 73.2— unavailable witness—statement admitted—no error**

The trial court did not err in a first degree murder prosecution by introducing the statement of an absent witness where the State's evidence showed that defendant had a copy of the statement well in advance of trial; defendant ascertained the witness's identity on or about the day trial began, five weeks before the statement's introduction; the trial court gave defendant an additional day to prepare to meet the statement and to frame a defense against its admission; defendant, after a lengthy and sensitive *voir dire*, did not request additional time to prepare to meet the statement; and defendant's counsel admitted that he was prepared to cross-examine the witness regarding the statement, indicating his familiarity with its substance. Defendant was provided with a fair opportunity to meet the witness's statement and therefore the notice given by the prosecutor was sufficient under N.C.G.S. § 8C-1, Rule 804(b)(5); moreover, the record reveals that the trial court took into account and made provision for the lack of time defendant had to locate the witness.

**2. Criminal Law § 73.2— statement of unavailable witness—sufficient guarantees of trustworthiness**

The statement of an unavailable witness contained sufficient guarantees of trustworthiness to be admitted in a murder prosecution under N.C.G.S. § 8C-1, Rule 804(b)(5) where the statement resembled a declaration against penal interest, there was extensive corroborating evidence, the witness manifested his personal knowledge of underlying events, there was a discernible motivation to speak the truth, and the witness never recanted his testimony. Although the reason for the witness's unavailability detracts from the truthworthiness of the statement, on balance the other indications of trustworthiness were sufficient.

**3. Constitutional Law § 30— failure of prosecutor to disclose impeachment material—no error**

The prosecutor in a first degree murder prosecution did not intentionally fail to inform defense counsel of material which could have been used to impeach the testimony of a State's witness, even though the State dismissed a charge of felony possession of marijuana immediately after the witness's testimony, where the lab report revealed only 13 grams of marijuana, an insufficient amount to constitute a felony. The witness's pleas of guilty to two other drug related charges and the State's decision to dismiss a charge it could not prove do not establish a plea bargain. N.C.G.S. § 15A-1054(c).

**4. Constitutional Law § 56— murder—sentencing phase—incapacitated juror—inquiry into fitness of juror on guilt phase denied—no error**

The trial court in a murder prosecution did not deprive defendant of his Sixth Amendment right to an impartial jury by failing to allow an inquiry into the fitness of a juror who participated in the guilt phase of the case where a

mistrial was declared during the penalty phase of the trial due to incapacity of a juror based on the juror's failure to return from an evening recess and a letter from the Wake County Alcoholism Treatment Center. Defendant did not bring forward the letter for review and there was not the slightest suggestion in the evidence before the court that the excused juror suffered from any mental or emotional condition that could have affected his deliberations during the guilt phase.

**5. Conspiracy § 5.1; Criminal Law § 73.2— murder—hearsay statements of co-conspirator — admissible**

The trial court did not err in a murder prosecution by admitting the testimony of two witnesses concerning their conversations with defendant's alleged co-conspirator concerning their plans to rob the victim and their willingness to shoot the victim if necessary. Defendant's own declarations served to establish a *prima facie* case of conspiracy and the court therefore did not err by admitting the hearsay statements of a co-conspirator against defendant. N.C.G.S. § 8C-1, Rule 801(d)(E).

**6. Homicide § 21.5— first degree murder—evidence sufficient**

The trial court did not err in a first degree murder prosecution by denying defendant's motions to dismiss all charges on the grounds of insufficient evidence where the State demonstrated that defendant admitted to his cousin the day before the killing took place that he intended to rob and, if necessary, kill the victim; the day before the murder defendant discussed with an accomplice how to use and hide a shotgun; defendant was positively identified as wearing a green Army jacket under which he hid a shotgun on his way to the victim's store moments before the murder; all of the witnesses at the time of the murder described one of the killers as wearing an Army jacket and carrying a shotgun; the assailants took the victim's briefcase, which contained an undetermined amount of money and shot the attending clerk; defendant left Raleigh immediately after the murder for Fayetteville where he registered under an alias; defendant spent money freely and admitted that the police were searching for him in connection with the victim's murder; and defendant was in possession of money marked with handwriting identified as the victim's. The same facts support convictions for armed robbery, assault with a deadly weapon with intent to kill inflicting serious injury, and conspiracy.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered on 14 February 1986 by *Stephens, J.,* upon defendant's conviction of first degree murder after a trial at the 5 August 1985 Criminal Session of Superior Court, WAKE County, *Lee, J.,* presiding. Defendant's petition to bypass the Court of Appeals for review of his convictions for which lesser sentences were imposed was allowed. Heard in the Supreme Court on 9 November 1987.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, Special Deputy Attorney General, and Linda Anne Morris, Associate Attorney General, for the state.*

*Thomas C. Manning and L. Michael Dodd for defendant appellant.*

EXUM, Chief Justice.

This appeal raises questions involving (1) the admissibility of an unavailable witness's statement under North Carolina Evidence Rule 804(b)(5)[1]; (2) whether the prosecutor intentionally failed to provide defendant with requested impeachment evidence; (3) whether the trial court should have ordered an inquiry into the fitness of a juror during the sentencing phase of this proceeding; (4) whether the state made a *prima facie* showing of a conspiracy independent of a co-conspirator's declarations; and (5) the sufficiency of the evidence to support the convictions of the crimes charged. We find no error in the trial.

## I.

Defendant was tried upon indictments charging murder, assault with a deadly weapon with intent to kill inflicting serious injury, conspiracy to commit robbery with a dangerous weapon, and robbery with a dangerous weapon.

At trial the state's evidence tended to show that on 29 January 1985 two black men entered the Capital Variety and Video Store in Raleigh and killed Roy Leonzia "Pete" Collins. Collins died as a result of a shotgun blast to the chest fired by one of the men. Gregory Council, a clerk in the store, was shot and seriously injured. The assailants took a briefcase containing an undetermined amount of money.

In addition to Council, four young adults were in the video store at the time of the killing. None of these witnesses could positively identify defendant as one of the assailants. They testified that they were unable to see the face of either man. They did, however, describe a man fitting defendant's general

---

1. North Carolina Rules of Evidence are codified in N.C.G.S. § 8C-1 (1986).

characteristics. They declared this man was wearing a green Army jacket and carrying a shotgun when he entered the store.

James Cooley testified that he saw defendant heading in the direction of the video store immediately before Collins was murdered. Cooley declared that defendant wore a green Army jacket and that a shotgun protruded from the jacket.

Alvin Banks, defendant's first cousin, testified that defendant visited him on two occasions shortly before the victim was killed. On both occasions defendant talked about a plan to rob and, if necessary, kill Pete Collins. Defendant was accompanied by Douglas Black both times. Defendant and Black discussed the ways they could utilize a shotgun in the course of the robbery. Banks' testimony was corroborated in substantial part by Dani Gail Isom, Black's former girlfriend, who testified concerning Black's stated intentions to rob Collins with defendant.

The state demonstrated that defendant went to Fayetteville on 1 February 1985 and registered at the Executive Hotel under the name of "David Brown." While there he encountered a former police informant, Nathaniel Ray. Officers from the Fayetteville and Raleigh Police Departments testified that Ray told them he purchased drugs for defendant over a period of days with money given him by defendant. When the officers asked Ray to produce any money defendant had given him, Ray showed them several twenty dollar bills, stating that he did not know which ones came from defendant. One of the bills had writing on it. The writing was identified at trial as the victim's by Jackie Humphries, a personal friend of the victim. Humphries also identified writing on another bill as the victim's. This bill had been in Douglas Black's possession shortly after the victim was killed.

Defendant offered no evidence.

The jury found defendant guilty as charged.

II.

[1] Defendant contends the trial court erred in permitting the state to introduce the statement of Nathaniel Ray under North Carolina Evidence Rule 804(b)(5). We disagree.

On 4 September 1985 the state served notice of its intention to offer Nathaniel Ray's statement into evidence under Rule

804(b)(5). Defendant objected on the grounds that the prosecutor did not comply with the notice provisions of the rule and that the statement lacked the required circumstantial guarantees of trustworthiness. The trial court sustained defendant's objection, without making a final ruling, in order to give him additional time to prepare for and contest the admission of Ray's statement into evidence.

On 6 September 1985 the court conducted an extensive voir dire concerning the statement's admissibility. The state called Sergeant Linwood McNair of the Fayetteville Sheriff's Department and Detective A. C. Munday of the Raleigh Police Department to testify regarding Ray's statement. According to these witnesses, Ray told them he met defendant four days after the murder. Ray stated he purchased drugs for defendant in Fayetteville over a three-day period. According to Ray, defendant spent money freely during this time, giving him $1,200 to $1,500 to purchase cocaine and heroin. Ray stated that defendant gave him this cash in small amounts so that he could purchase only one gram of cocaine at a time. Defendant also gave him cash to pay for the taxicabs he took to complete the deals. Ray said that on some nights he made seven or eight trips within a four-hour period. Ray declared defendant said the police were looking for him in connection with the murder of Pete Collins, and that they had searched for him at his parents' home in connection with breaking or entering and larceny charges.

During voir dire the state demonstrated that most of the information communicated by Ray was verified independently. The police located defendant precisely where Ray declared he was staying. Ray's physical description of defendant matched him perfectly. Police records indicated defendant was, in fact, a suspect in the murder of Pete Collins, and that the Raleigh Police Department had conducted a search for defendant at his parents' home in connection with breaking or entering and larceny charges. Finally, the hotel manager testified that defendant always paid his bills in cash. The portion of Ray's statement regarding his nightly taxicab rides could not be verified.

The state outlined its efforts to locate Ray before and during trial. The state demonstrated that on or about 26 July 1985 it issued a subpoena for Ray. Sergeant McNair described how he

and others in the Fayetteville police department tried to locate Ray and serve the subpoena. According to Sergeant McNair, Ray was difficult to find because he did not reside at a permanent address. When Ray was utilized in the past the officers had to find him on the street or at one of the motels where he occasionally stayed. Sergeant McNair testified that he, and others involved with law enforcement in Fayetteville, attempted to find Ray at these locations before and during trial. The prosecutor declared that throughout the trial he had the expectation that Ray would be produced. According to the prosecutor, it was not until 3 September 1986 that he was informed Ray could not be found.

The state put on evidence demonstrating that defendant had obtained a copy of Ray's statement well before trial pursuant to a discovery request. The state showed further that defendant learned Ray's identity on or about the day of trial. Defense counsel admitted that he had been prepared to cross-examine Ray on the basis of this statement.

In argument to the court defendant's counsel called attention to Ray's extensive police record. He documented Ray's convictions of common law robbery, assault, and armed robbery. He also demonstrated numerous occasions when Ray had been charged with committing violent crimes.

At the close of the voir dire the court overruled defendant's objection to the admission of Ray's statement under Rule 804(b)(5). The court concluded that defendant was not deprived of a fair opportunity to prepare to meet the statement because he knew the statement's substance well in advance of trial and because he ascertained Ray's identity on the day trial began. The court also concluded that the statement possessed "a reasonable probability of truthfulness," and supported this conclusion by noting that many of the statement's details were independently verified.

Defendant argues on appeal that the trial court erred in admitting Ray's statement under Rule 804(b)(5), advancing the same contentions he made at trial—that is, Ray's statement should not have been admitted because the prosecutor failed to comply with the notice provisions of Rule 804(b)(5) and because the statement lacked the necessary guarantees of trustworthiness. We disagree with both contentions.

Rule 804(b)(5) provides in pertinent part:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (5) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

N.C.G.S. § 8C-1, Rule 804(b)(5) (1986). We have recently interpreted this rule as it applies to both contentions defendant raises. *See State v. McLaughlin*, 316 N.C. 175, 340 S.E. 2d 102 (1986); *State v. Triplett*, 316 N.C. 1, 340 S.E. 2d 736 (1986). We look now to these opinions for guidance.

In *State v. Triplett* we discussed the rule's notice requirement. We declared that this requirement should be construed flexibly, "in light of the express policy of providing a party with a fair opportunity to meet the proffered evidence." *Triplett*, 316 N.C. at 13-14, 340 S.E. 2d at 43. In arriving at this interpretation we noted that a majority of the federal circuits take a flexible approach toward the identically worded federal notice provision. *Id.; see Furtado v. Bishop*, 604 F. 2d 80, 92 (1st Cir. 1979), *cert. denied*, 444 U.S. 1035 (1980); *United States v. Bailey*, 581 F. 2d 341, 348 (3d Cir. 1978); *United States v. Carlson*, 547 F. 2d 1346, 1355 (9th Cir. 1976).

We conclude defendant was provided with a fair opportunity to meet Nathaniel Ray's statement; therefore, the notice given by the prosecutor of his intention to admit Ray's statement was sufficient under Rule 804(b)(5). The state's evidence showed that defendant had a copy of Ray's statement well in advance of trial. The state also demonstrated that defendant ascertained Ray's identity on or about the day trial began—five weeks before its introduction into evidence. The trial court gave defendant an additional day to prepare to meet the statement and to frame a defense against its admission into evidence. After a lengthy and sensitive voir dire, defendant did not request additional time to prepare to meet the statement before the state sought admission during trial. Finally, defendant's counsel admitted that he was prepared to cross-examine Ray regarding the statement, thus indicating his familiarity with its substance.

Defendant argues that even if he had a fair opportunity to meet the statement itself he lacked an adequate opportunity to locate Nathaniel Ray. Defendant points out that the addresses listed in the notice served by the prosecutor provided no help in locating Ray and suggests that additional time would have enabled his court-appointed investigator to find Ray. Defendant characterizes the prosecutor's delay in sending his notice and the inadequacy of the addresses provided as "sandbagging" and asserts "the court did not take this 'sandbagging' into account whatsoever when it ruled on the admissibility of the statement on notice grounds."

The record reveals the trial court both took into account, and made provision for, the lack of time defendant had to locate Ray. The following exchange took place between the court and defendant's counsel after the state made its initial motion for the admission of Ray's statement under Rule 804(b)(5):

COURT: I take it one of the first things you said, even if otherwise admissible, you have not had time to prepare and try to find the witness yourself, is that correct?

MR. MANNING: That's correct . . . . That's our second objection.

COURT: Have you ever had your private investigator look for the witness?

MR. MANNING: No, sir. I have been prepared to cross-examine this man ever since we got his statement.

COURT: You did not know until when that he would not be here?

MR. MANNING: Until just before lunch, Your Honor . . . .

After this colloquy, which occurred on 4 September 1985, the court concluded:

COURT: At the very least, I don't believe the defendant has had enough notice.

The court then decided to give defendant until 6 September 1985 to locate Ray through his court-appointed investigator. This exchange, and the trial court's decision to postpone the hearing on the admissibility of Ray's statement, evinces the court's concern that defendant be given not only an opportunity to meet the statement's substance but to locate the declarant as well. By giving defendant additional time to prepare to meet Ray's statement, and to locate him if possible, the court ensured that notice provisions of Rule 804(b)(5) were met.

[2] With regard to defendant's contention that Ray's statement lacked circumstantial guarantees of trustworthiness, we look to our recent *McLaughlin* decision for guidance. In *McLaughlin* we stated that "[t]o be admissible under the residual exception to the hearsay rule, the hearsay statement must possess 'guarantees of trustworthiness' that are equivalent to the other exceptions contained in Rule 804(b)." *McLaughlin*, 316 N.C. at 179, 340 S.E. 2d at 104. The other exceptions of Rule 804(b) are former testimony, dying declarations, statements against interest, and statements of personal or family history.

A trial judge should consider a number of factors in determining whether a hearsay statement possesses sufficient indicia of trustworthiness to be admitted under Rule 804(b)(5). Among these factors are: (1) the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth; (3) whether the declarant recanted; and (4) the reason, within the meaning of Rule 804(a), for the declarant's unavailability. *State v. Triplett*, 316 N.C. at 10-11, 340 S.E. 2d at 742; *State v.*

*Smith*, 315 N.C. 76, 93-94, 337 S.E. 2d 833, 845 (1985).[2] In *McLaughlin* we noted this list is not inclusive and suggested that other factors may be considered when appropriate. *McLaughlin*, 316 N.C. at 179, 340 S.E. 2d at 105. Among the many factors which courts have considered are the existence of corroborating evidence, *see, e.g., United States v. Bailey*, 581 F. 2d 341 (3d Cir. 1978), and the degree to which the proffered testimony has elements of enumerated exceptions to the hearsay rule. *See, e.g., Karme v. Commissioner*, 673 F. 2d 1062 (9th Cir. 1982); *United States v. McPartlin*, 595 F. 2d 1321 (7th Cir. 1979), *cert. denied*, 444 U.S. 833 (1980); *see generally* Sonenshein, *The Residual Exceptions to the Federal Hearsay Rule: Two Exceptions in Search of a Rule*, 57 N.Y.U.L. Rev. 867 (1982).

Based on our assessment of these factors in the present case we hold that Ray's statement contained sufficient circumstantial guarantees of trustworthiness to be admitted under Rule 804(b)(5). One of the factors which we find persuasive in upholding the trial court's decision to admit Ray's statement under Rule 804(b)(5) is the extent to which Ray's statement resembles a declaration against penal interest. Ray admitted to the purchase and delivery of cocaine and heroin, crimes for which he could have been charged, convicted, and sentenced. The lack of corroborating evidence as to this portion of his statement rendered it inadmissible under Rule 804(b)(3). N.C.G.S. § 8C-1, Rule 804(b)(3) (1986). Nonetheless, Ray's admission to law enforcement officers that he committed felonies provides that sort of indicia of reliability underlying the declaration against penal interest exception. This is not to say that were this the only indication of reliability we would admit Ray's statement under the catchall exception of Rule 804. To do so would vitiate the safeguards built into Rule

---

2. In *Triplett* we suggested that trial courts should consider as a fourth factor "the practical availability of the declarant to be present at trial for meaningful cross-examination." *Triplett*, 316 N.C. at 11, 340 S.E. 2d at 742. We have reworded this factor in the present case in order to clarify its purpose. The purpose is to encourage trial courts to assess *the reason* for the declarant's unavailability. Rule 804(a) lists five ways in which a declarant may be considered "unavailable." In some cases the reason a declarant is found to be unavailable under the rule might influence the court's determination regarding the trustworthiness of his statement. For instance, if the declarant is unavailable under Rule 804(a)(2) because he "[p]ersists in refusing to testify concerning the subject matter of his statement despite a court order to do so" the court might weigh this as a factor against admitting declarant's statement.

804(b)(3). It is merely to acknowledge that when a statement nearly fits an enumerated exception it has a degree of circumstantial trustworthiness which is relevant to the ultimate determination the trial court must make.

Another factor which supports our decision to uphold the trial court is the extensive evidence corroborating Ray's statement. As the trial court noted in assessing the statement's admissibility, "there are matters contained in the statement which could not have been known to the out of court declarant . . . if the statement did not have a reasonable probability of truthfulness." We have already noted the ways in which the state demonstrated Ray's statement was independently verified. We believe that this independent verification, while not alone sufficient to enable the trial court to admit Ray's statement under Rule 804(b)(5), provided a useful basis for evaluating its trustworthiness.

Finally, an assessment of three of the factors specified in *Triplett* contributes to our decision that the trial court correctly admitted Ray's statement under Rule 804(b)(5). (1) Ray manifested his personal knowledge of the underlying events in many ways: the accuracy with which he described defendant's physical characteristics, his precise identification of the room defendant was staying in, and the personal statements he declared defendant made to him. (2) Ray's motivation to speak the truth is discernible in his willingness to include in his statement what amounts to declarations against his penal interests. (3) Ray never recanted his testimony.

Assessment of the fourth *Triplett* factor—the reason for Ray's unavailability—weighs against admission of his statement. Ray was unavailable under Rule 804(a)(5) because the state was unable to locate him "by process or other reasonable means." The evidence indicated that Ray had no permanent home and could be found only on the street or at one of the motels where he often stayed. This manifests an instability in Ray's character and lifestyle which detracts, in some measure, from the trustworthiness of his statement. We do not believe, however, that this factor is sufficient to overcome the evidence favoring admission of the statement. On balance, the other indications of the trustworthi-

ness of Ray's statement were sufficient to enable the trial court to admit it under 804(b)(5).

### III.

[3]   Defendant next contends that he should be awarded a new trial because the prosecutor intentionally failed to inform his counsel of the existence of material which could have been used to impeach the testimony of James Cooley. The record reveals no such intentional failure by the prosecutor; therefore, defendant's contention is unfounded.

Before trial defendant's counsel moved the court to compel the prosecutor to comply with discovery requests for specified items as well as for disclosure of impeaching information. The motions were heard by Judge Donald L. Stephens. Judge Stephens denied the motions on the basis of the prosecutor's acknowledgment of his obligation to provide requested discovery items and impeaching evidence under both N.C.G.S. § 15A-1054(c) and *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215 (1963).

One of the state's principal witnesses, James Cooley, testified that he witnessed defendant approach the Capital Variety and Video store, where the victim was murdered, just before the crime occurred. Cooley saw part of a shotgun protruding from defendant's green Army jacket. Cooley, at the time he testified, was under indictment for misdemeanor possession of phenmetrazine, felony possession of marijuana, and possession with intent to sell and deliver marijuana. On direct Cooley testified that no promises, threats or any other kind of inducement had been given him in exchange for his testimony.

Immediately after Cooley's testimony, he and the prosecutor went to another courtroom where Cooley entered pleas of guilty to misdemeanor possession of phenmetrazine and possession with intent to sell and deliver marijuana. The state dismissed the charge of felony possession of marijuana. A review of the transcript reveals the state dismissed this charge because the lab report indicated that Cooley possessed only 13 grams of marijuana—an amount insufficient as a matter of law to constitute a felony.

Defendant argues that the state's decision to dismiss the charge of felony possession indicates that it entered into a plea

bargain arrangement with Cooley in exchange for his testimony in the present case. Defendant contends the prosecutor was under a constitutional and statutory duty to communicate this bargain to him and that his intentional failure to do so must result in a new trial.

The record simply fails to sustain defendant's contention that there was a plea bargain. It reveals only that the state dismissed a felony possession charge against Cooley because, as a matter of law, the evidence was insufficient to support a conviction. The fact that this occurred immediately after Cooley testified in the present case does not, standing alone, warrant the inference that the prosecutor entered into an undisclosed deal with Cooley. Cooley pled guilty to two charges, and the state dismissed one it could not prosecute successfully. The state's decision to dismiss a charge it could not prove, and Cooley's decision to plead guilty to the only charges of which he could be convicted, does not establish a bargained-for exchange. Therefore, we decline to infer any violation by the prosecutor of his duty to disclose evidence which defendant could utilize for impeachment purposes.

IV.

[4] Defendant next contends he deserves a new trial because the court deprived him of his sixth amendment right to an impartial jury by failing to allow inquiry into the fitness of a juror who participated in the guilt phase of the case.

On 17 September 1985, during the penalty phase of the case, a mistrial was declared due to the incapacity of a juror. This juror did not return from the evening recess taken on 16 September. The trial court considered a letter from John S. Howie, M.D., Wake County Alcoholism Treatment Center, which concerned "the medical condition of the juror." Based on the contents of this letter the trial court concluded that the juror "due to medical reasons is incapacitated and will be unable to complete the trial." This letter is not before us. It was sealed by the trial court and placed "with all of the other evidence in this case and shall not be released . . . to anyone, except by order of the Court or for the purposes of appellate review." Defendant has not brought forward the letter for us to examine and has not suggested that this Court review its contents.

On 19 September 1985 defendant made a motion for appropriate relief in which he requested an evidentiary hearing into the excused juror's competence to serve as a juror during the guilt phase. He also requested a new trial "on the basis of the incapacity of the juror." The motion states: "It is apparent that the [excused juror] has been suffering from a medical disturbance of some magnitude for some time. The pressures of this trial have obviously caused him to become incapacitated to the point where the Court has excused him from further service. . . . [I]t has become apparent that [this juror] was unbalanced, to a degree of which it is not certain at present." Defendant moved that he be given time to obtain all of the juror's medical records and that a psychiatrist be appointed to examine the juror to make a determination regarding the juror's "competence and sanity which existed at the time he was empanelled as a juror, and what his mental state was during deliberations on guilt-innocence . . . ." The motion was not verified. Judge Lee denied defendant's motion on 2 December 1985. On 14 February 1986, after a full sentencing hearing, Judge J. Donald Stephens entered the sentences imposed in the present case.

Defendant, without citing any authority, argues that the trial court's denial of his motion for appropriate relief violated his sixth amendment right to an impartial jury. He asks this Court to remand the matter and direct the trial court to "reopen the inquiry into [the juror's] fitness to determine what effect, if any, his emotional and psychological condition had upon his fitness to serve and deliberate, or, . . . to order a new trial."

We find no basis in the record for granting the relief defendant seeks. There is not the slightest suggestion in the evidence before us that the excused juror suffered from any mental or emotional condition that could have affected his deliberations during the guilt phase. When he was excused the trial court referred only to "medical reasons" which *at that time* rendered the juror incapacitated. Defendant's motion for appropriate relief contains no factual allegations concerning the juror's mental or emotional condition. Insofar as it refers to these things it consists entirely of assumptions and suppositions which, in turn, are based on nothing more than the juror's having been excused as a result of a letter from the Wake County Alcoholism Treatment Center.

We find no error, therefore, in the trial court's refusal to make further inquiry as to the excused juror's fitness to serve during the guilt phase and decline to grant the relief requested by defendant.

V.

[5] Defendant next argues the trial court erred in admitting the testimony of Alvin Banks and Dani Gail Isom concerning their conversations with Douglas Black, defendant's alleged co-conspirator. Defendant contends the state failed to show by independent evidence that he conspired with Black; therefore, Black's statements were not admissible against him.

Alvin Banks, defendant's first cousin, testified concerning conversations he had with defendant and Douglas Black regarding their plan to rob the victim. Banks declared that defendant and Black visited him on two occasions in order to acquire a gun. The first visit occurred several days before the victim was murdered. During this visit defendant told Banks that he intended to rob the victim and that he would shoot him if necessary. Defendant and Black discussed the planned robbery in Banks' presence. The second visit occurred the day before the victim was murdered. On this occasion defendant and Black repeated their request for a gun. Defendant again stated his intention to shoot the victim if necessary, but complained to Black that he was unfamiliar with shotguns. Defendant and Black discussed ways to hide a shotgun.

Dani Gail Isom, Douglas Black's girlfriend, testified under a grant of immunity concerning Black's statements regarding his intent to rob the victim. Black told Isom that he and defendant planned to take the victim's briefcase which they believed to be full of money. Isom testified that she purchased a pump shotgun for Black. She bought the gun on 22 January 1985. The victim was murdered one week later.

The acts and declarations of conspirators are admissible against other members of the conspiracy provided that the state establishes a *prima facie* case of the conspiracy independently of the declarations sought to be admitted. *State v. Tilley*, 292 N.C. 132, 138, 232 S.E. 2d 433, 438 (1977); N.C.G.S. § 8C-1, Rule 801(d)(E) (1986). In order to make a *prima facie* case, the state must produce sufficient evidence to authorize the jury to find

that a conspiracy existed. *State v. Polk*, 309 N.C. 559, 565, 308 S.E. 2d 296, 299 (1983). Ideally, the state should make the *prima facie* showing before tendering the co-conspirator's declarations; however, in its discretionary control of the presentation of evidence the court may admit the declarations subject to subsequent proof of the conspiracy. *State v. Albert*, 312 N.C. 567, 576, 324 S.E. 2d 233, 238 (1985); *State v. Tilley*, 292 N.C. at 138-39, 232 S.E. 2d at 438-39.

In the present case defendant's own declarations to Alvin Banks and Douglas Black serve to establish a *prima facie* case of a conspiracy between Black and defendant to rob and, if necessary, kill the victim. Defendant's statements amount to party admissions and are therefore admissible under N.C.G.S. § 8C-1, Rule 801(d)(A). This rule codifies our established practice of admitting party admissions as exceptions to the hearsay rule. *See generally* 2 Brandis on North Carolina Evidence § 167 (2d rev. ed. 1982). Based on defendant's admissions a jury could find that defendant conspired with Black to commit armed robbery. Therefore, the trial court did not err in admitting Black's hearsay statements against defendant.

## VI.

[6] Defendant contends finally that the trial court erred in denying his motions to dismiss all charges on grounds of insufficiency of the evidence.

The rule in North Carolina is that a guilty verdict will be upheld if the state presents substantial evidence of each element of the offense charged. *State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion that defendant committed the offense. *Id.* When ruling on a motion to dismiss in a criminal case the trial judge must consider the evidence in the light most favorable to the state, giving the state the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies are for resolution by the jury. *Id.*

The state presented substantial evidence that defendant was guilty of first degree murder under both a premeditation and deliberation theory and a felony murder theory. The state demon-

strated that defendant admitted to his cousin the day before the killing took place that he intended to rob and, if necessary, kill the victim. The day before the murder defendant discussed with Douglas Black how to use, and hide, a shotgun. Defendant was positively identified as wearing a green Army jacket, under which he hid a shotgun, on his way to the victim's store moments before the murder. All of the witnesses at the store at the time of the murder described one of the killers as wearing a green Army jacket and carrying a shotgun. The assailants took the victim's briefcase, which contained an undetermined amount of money, and shot the attending clerk. Defendant left Raleigh immediately after the murder and registered in a Fayetteville hotel under an alias. There he spent money freely and admitted that the police were searching for him in connection with the victim's murder. At that time he possessed money marked with handwriting identified at trial as the victim's. Taken together, we believe this constitutes substantial evidence that defendant murdered the victim.

The same facts serve to support the trial court's decision not to dismiss the charges of armed robbery, conspiracy to commit armed robbery, and assault with a deadly weapon with intent to kill inflicting serious injury. The state's evidence indicates that whoever murdered the victim also robbed him and shot Gregory Council. Hence, the evidence implicating defendant as the victim's murderer also serves to support convictions of armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant's discussions with Douglas Black concerning their scheme to rob the victim, and their efforts to obtain a gun to carry out their plan, justify submitting the conspiracy charge to the jury. Thus, defendant's argument that these charges should not have gone to the jury is meritless.

In summary, we hold that in defendant's trial there was

No error.