STATE v. JACKSON

[126 N.C. App. 129 (1997)]

STATE OF NORTH CAROLINA v. ELIZABETH WASHINGTON JACKSON

No. COA96-565

(Filed 6 May 1997)

1. **Evidence and Witnesses § 876 (NCI4th)— statements of victim—hearsay—state of mind exception**

   Testimony by an assault victim's mother that the victim told her that defendant had put a gun to his head and asked him if that was "what he wanted" and that defendant was "serious about hurting him and breaking up with him" and that "she scared him so bad" that he was going to file for a legal separation from her was admissible under the state of mind exception to the hearsay rule to rebut defendant's testimony that she shot the victim in self-defense and to show the relationship between the victim and defendant. Furthermore, the trial court did not abuse its discretion in finding that the probative value of this testimony outweighed any prejudice to defendant. N.C.G.S. §8C-1, Rules 803(3) and 403.

   **Am Jur 2d, Evidence § 667.**

2. **Evidence and Witnesses § 927 (NCI4th)— hearsay—reliability—Confrontation Clause of U.S. Constitution**

   The admission of hearsay statements in a criminal trial did not violate the Confrontation Clause of the U.S. Constitution without a showing that the out-of-court declarant was unavailable.

   **Am Jur 2d, Constitutional Law § 849; Evidence § 832.**

STATE v. JACKSON

[126 N.C. App. 129 (1997)]

Residual hearsay exception where declarant unavailable, Uniform Evidence Rule 804(b)(5). 75 ALR4th 199.

3. **Evidence and Witnesses § 927 (NCI4th)— hearsay—necessity and trustworthiness—Confrontation Clause of N.C. Constitution—available declarant**

Necessity and trustworthiness are prerequisites to the introduction of hearsay testimony under the Confrontation Clause of the N.C. Constitution; therefore, although testimony fell within a firmly rooted hearsay exception, the trial court erred in admitting the testimony because the declarant was available as a witness.

Am Jur 2d, Evidence §§ 685, 786.

Residual hearsay exception where declarant unavailable, Uniform Evidence Rule 804(b)(5). 75 ALR4th 199.

4. **Evidence and Witnesses § 735 (NCI4th)— hearsay testimony—prejudicial error**

The trial court's erroneous admission of hearsay testimony relating to the victim's state of mind was prejudicial to defendant where the hearsay evidence placed a handgun in the possession of defendant the day before the assault, showed that defendant threatened the victim's life with the handgun the day before the assault, showed that the victim was "scared" of defendant, and was inconsistent with defendant's testimony that the victim was the aggressor on the day of the assault and that defendant shot only in self-defense.

Am Jur 2d, Evidence §§ 333, 659.

Residual hearsay exception where declarant unavailable, Uniform Evidence Rule 804(b)(5). 75 ALR4th 199.

Appeal by defendant from judgment entered 16 November 1995 in Forsyth County Superior Court by Judge Jerry Cash Martin. Heard in the Court of Appeals on 19 March 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Hilda Burnett-Baker, for the State.*

*J. Darren Byers, for defendant.*

STATE v. JACKSON

[126 N.C. App. 129 (1997)]

GREENE, Judge.

Elizabeth Jackson (defendant) appeals from a jury verdict finding her guilty of assault with a deadly weapon with intent to kill inflicting serious injury and judgment and commitment sentencing her to imprisonment for a minimum of 108 months and a maximum of 139 months.

The State presented the following pertinent evidence: On 31 October 1994, General Jackson, III (Jackson) was shot five times with a .25 caliber semi-automatic pistol. On the same day, Edward Kelly (Kelly), an employee at Evergreen Cemetery, found defendant's car in the cemetery and after following tracks going into the woods, found Jackson "laying down in some weeds."

At 12:30 on 31 October, the defendant called her friend Tanzia to ask for a ride. Tanzia picked up the defendant, who had a shovel with her, and at the defendant's request, took her to Evergreen Cemetery. Once at the cemetery, defendant indicated that her car was stuck in the woods at the back of the cemetery. They proceeded to search for a tow truck to pull defendant's car out of the cemetery, but could not find anyone to do it. On the way back to defendant's home they drove by the cemetery and saw numerous emergency vehicles at the cemetery where defendant had indicated her car was located. At that time, defendant "started crying" and "saying she shot [Jackson], she killed him." Tanzia saw that defendant had with her a small silver handgun with a brown handle, that defendant later gave to the magistrate at the Clerk's office.

In a statement made to the police, defendant stated that after initially shooting Jackson, she got back into the car, reloaded the gun and fired at Jackson two or three more times "because he was getting up and coming back towards the car." At no time after shooting Jackson did she call an ambulance or attempt to get help for him.

Walter Harrison, an employee of Harrison and Sons Body Shop, stated that the defendant came to the shop looking for a wrecker to get her car out of the cemetery and told him that she had shot someone. Harrison gave a statement to police, however, that stated that the defendant told him that Jackson shot himself.

Officer Jeff Branham (Branham) of the Winston-Salem Police Department responded to a call that defendant was at the old Clerk's office. The defendant was "hysterical" and crying and "was mumbling something about killing somebody." The magistrate gave Branham a

gun and a clip that defendant had given the magistrate. The gun was identified as a Raven .25 caliber pistol and it was determined that the five spent casings found at the cemetery were fired from that gun. A "gunshot residue analysis" was performed on both Jackson and defendant. The analysis was inconclusive as to whether Jackson or the defendant fired the gun. Jennifer Angel stated that the defendant had asked her about guns and how to load the gun without a clip and saw the defendant's handgun at defendant's house. Jackson's brother-in-law testified that defendant was very domineering towards Jackson.

Lillian Jackson (Mrs. Jackson), Jackson's mother, testified over defense counsel's objection that on 30 October she had a conversation with Jackson at which time he told her that on 29 October he and defendant had argued and in the early morning hours of 30 October on his way home, he saw defendant's car parked in a church parking lot and pulled over to speak with her. Jackson got out of his car and into the defendant's car. The defendant put a gun to Jackson's head and asked if that was "what he wanted" and then put the gun to her head and asked "or is this what you want." Jackson then got out of the car and went to Mrs. Jackson's home and told her that the defendant was "serious about hurting him and breaking up with him" and that "she had scared him so bad" that he was going to file for a "legal separation" the next day.

·The trial court found that this testimony was hearsay but admissible under Rule 803(3)[1], relevant under Rule 401 and that pursuant to Rule 403 "the probative value does outweigh any risk of prejudicial effect to the defendant."

The defendant presented the following evidence: Jackson and defendant purchased the Raven .25 caliber handgun in 1990 and kept it in a royal blue and gold bag. Jackson explained to the defendant how to use the gun and defendant shot the gun on one occasion as practice.

Defendant informed Jackson in the middle of October that she was planning on moving to Florida and taking the children with her. She had packed all of her belongings and Jackson became aware of

---

1. At the conclusion of a voir dire hearing on the admissibility of Mrs. Jackson's testimony the trial court stated (outside the presence of the jury) that the testimony tended "to show several things:" (1) the marital problems the defendant and the victim were having; (2) the intent of the victim to break up with the defendant; (3) the lack of provocation by the victim; and (4) the motive of the defendant.

the fact that she was moving when he came to defendant's residence on 29 October to watch their child.

Very early in the morning of 30 October Jackson and defendant met in a church parking lot. Jackson did not get into defendant's car and there was no gun present that defendant was aware of. On 31 October defendant picked up Jackson and their son from Mrs. Jackson's house at approximately 10:30 a.m. Defendant noticed that despite it being a warm and humid day Jackson was wearing a large coat. After driving around, Jackson requested that defendant pull the car into Evergreen Cemetery so that they could talk. Jackson told defendant to drive the car further into the cemetery away from the road. After talking for a while, Jackson got out of the car and asked defendant to give him a hug. She gave him a hug, but Jackson never removed his hands from his pockets. Defendant then got back into the car, but Jackson stood outside of the car on the passenger side. Defendant got out of the car again and Jackson then started asking her questions about moving to Florida and taking the children and began to "get a little on the mad side." Defendant noticed that Jackson pulled out of his coat pocket the royal blue and gold sack in which they kept the gun. Upon seeing the sack, defendant ran around behind the car and heard the gun being fired, although she does not know in which direction the gun was fired and did not actually see the gun. Realizing that she was in danger, she charged Jackson. She remembers being pulled toward the woods and then getting to her feet, grabbing the gun, and as "an automatic reaction" began firing the gun, the first shot hitting Jackson in the side.

After firing a number of shots, defendant got into the car and began following Jackson in the car so that she "could tell someone where [she] remember[s] last seeing him." She got out of the car and followed Jackson to where he lay bleeding and still breathing. Not knowing what to do, defendant got back into the car and began looking for her keys, and found a box of ammunition that "obviously was planted in the car at some point." Eventually defendant, carrying the child, walked out of the cemetery, leaving the car stuck in the mud.

Defendant got a ride home and phoned her mother and told her that Jackson had tried to kill her and that she had shot him. She then called Tanzia who came to pick her up. Defendant got a shovel from the tool shed to use to get her car out of the mud. Defendant remembers asking Richard Porter where she could get a truck to tow her car, but doesn't remember saying anything else to him. She remembers

asking another person to get her car but does not remember telling the person that she shot a man. They then drove to pick up her other son from daycare, went to Hardee's and then drove by the cemetery again on her way to the Clerk's office. Defendant gave the gun to someone at the Clerk's office and then was taken to the Public Safety Center by a police officer. Between the time of the shooting and the time that defendant went to the Clerk's office was approximately two hours. On cross-examination, defendant stated that she did not remember telling Branham or Tanzia that she had "killed" Jackson, but only that she had shot him.

Tanya Roan testified that defendant had told her in October that she was moving to Florida and saw that her things had been packed. Margie McDonald recalled seeing Jackson strike defendant once when he was "defending himself."

At the time of the trial Jackson was still in rehabilitative therapy, his worst problem being his ability to communicate. "He is able to answer yes or no questions kind of inconsistently," meaning that he does not give appropriate responses half of the time, and he cannot put phrases together. On voir dire, however, after questioning by both parties, the trial court ruled that Jackson was "competent to testify in this matter as a witness." Jackson was not called as a witness in this case by either the State or the defendant although he was in the courtroom.

The trial court instructed the jury on self-defense.

The issues are whether: (I) Mrs. Jackson's testimony of her conversation with Jackson is admissible under Rules 803(3), 401 and 403; (II) the testimony violated the defendant's State and/or Federal Constitutional Rights to confront the witnesses against her; and if so, (III) the error was harmless.

## I

### State of Mind Exception

[1] "Evidence tending to show the state of mind of the victim is admissible [pursuant to Rule 803(3)] as long as the declarant's state of mind is relevant [pursuant to Rule 401] to the case." *State v. Meekins*, 326 N.C. 689, 695, 392 S.E.2d 346, 349 (1990). In this case, the victim's state of mind is relevant to rebut the defendant's self-defense inferences that she did not shoot Jackson until he first pulled a gun and shot at her. *State v. Faucette*, 326 N.C. 676, 683, 392 S.E.2d

71, 74-75 (1990). "The jury could infer from the evidence regarding [Jackson's] state of mind that it was unlikely that [he] would do anything to provoke defendant . . . ." *Id.* Furthermore, the evidence is relevant to show the state of mind of Jackson and the relationship between him and his wife, the defendant, shortly before the assault. *State v. Lynch,* 327 N.C. 210, 224, 393 S.E.2d 811, 819 (1990); *State v. Cummings,* 326 N.C. 298, 313, 389 S.E.2d 66, 74 (1990); *see State v. Alston,* 341 N.C. 198, 230-31, 461 S.E.2d 687, 704 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 100 (1996).

Defendant argues that the evidence should not have been admitted because pursuant to Rule 403, "the testimony was extremely prejudicial to the defendant." The exclusion of evidence under Rule 403 is within the sound discretion of the trial court. *State v. Syriani,* 333 N.C. 350, 379, 428 S.E.2d 118, 136, *cert. denied,* 510 U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied,* 510 U.S. ——, 126 L. Ed. 2d 707 (1994). The record reveals that the trial court carefully reviewed the evidence and determined that the probative value outweighed any prejudicial effect to the defendant and we determine that there was no abuse of discretion.

The defendant also argues that error was committed because the trial court admitted Mrs. Jackson's testimony for the purpose of showing the motive of the defendant. Although the trial court did indicate at the conclusion of the voir dire that it was admitting Mrs. Jackson's testimony for several purposes, including to show the motive of the defendant, there is nothing in the record indicating that this information was made available to the jury. Accordingly, any error committed by this trial court on this issue could not have prejudiced the defendant.

## II

### Confrontation Clause

The defendant argues that because Jackson was available and competent and did not testify, the admission of Jackson's hearsay statements was violative of the defendant's state and federal constitutional rights under the Confrontation Clauses. Specifically the defendant argues that because the out-of-court declarant (Jackson) was available and was not called as a witness, it violated his constitutional confrontational rights to admit the out-of-court statements through the testimony of Mrs. Jackson.

STATE v. JACKSON

[126 N.C. App. 129 (1997)]

The federal and North Carolina constitutions provide that in criminal prosecutions the accused shall have the right to confront the witnesses against him. U.S. Const. amend. VI; N.C. Const. art. I, § 23.

## United States Constitution

[2] In 1980 the United States Supreme Court interpreted the Confrontation Clause of the Sixth Amendment to require that before hearsay statements could be received into evidence in a criminal case, the State must show that the hearsay declarant is unavailable *and* that the statement "bears adequate 'indicia of reliability.' " *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608 (1980). In 1992 the United States Supreme Court essentially eliminated[2] the "unavailability" or necessity prong of the *Roberts* test and held that "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois*, 502 U.S. 346, 356, 116 L. Ed. 2d 848, 859 (1992).

The North Carolina courts are bound by the United States Supreme Court interpretation of the United States Constitution. *See State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984) (applying the totality of circumstances analysis required by the Supreme Court of the United States to Fourth Amendment question). Accordingly, the admission in a criminal trial of hearsay testimony does not violate the Confrontation Clause contained in the United States Constitution if the evidence is reliable. There is no requirement that the State also show that the out-of-court declarant is unavailable to testify. The evidence is sufficiently reliable "where the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by a 'showing of particularized guarantees of trustworthiness.' " *Idaho v. Wright*, 497 U.S. 805, 816, 111 L. Ed. 2d 638, 653 (1990), (quoting *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608).

## North Carolina Constitution

[3] This Court has consistently held that:

> "To introduce hearsay evidence in a criminal trial, the prosecution must meet two requirements: (1) it must show the necessity for using hearsay testimony, and (2) it must establish the inherent trustworthiness of the original declaration."

---

2. The *White* Court noted that the "unavailability" analysis remains a "necessary part of the Confrontation Clause inquiry . . . when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White*, 502 U.S. 354, 116 L. Ed. 2d. at 858.

**STATE v. JACKSON**

[126 N.C. App. 129 (1997)]

*State v. Ward,* 118 N.C. App. 389, 397, 455 S.E.2d 666, 670 (1995) (quoting *State v. Jones,* 89 N.C. App. 584, 589, 367 S.E.2d 139, 143 (1988)); *see State v. Rogers,* 109 N.C. App. 491, 498-99, 428 S.E.2d 220, 225 (defendant argued both federal and state constitutions), *cert. denied,* 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied,* 511 U.S. —, 128 L. Ed. 2d 54, *reh'g denied,* 511 U.S. —, 128 L. Ed. 2d 495 (1994); *In re Lucas,* 94 N.C. App. 442, 446, 380 S.E.2d 563, 565-67 (1989); *State v. Gregory,* 78 N.C. App. 565, 568, 338 S.E.2d 110, 112 (1985), *dismissal allowed, disc. rev. denied,* 316 N.C. 382, 342 S.E.2d 901 (1986).

Our North Carolina Supreme Court has likewise held that there is a "two-prong constitutional test for the admission of hearsay under the confrontation clause, i.e., necessity and trustworthiness." *State v. Peterson,* 337 N.C. 384, 392, 446 S.E.2d 43, 48 (1994) (defendant argued both federal and state constitutions); *see State v. Swindler,* 339 N.C. 469, 472, 450 S.E.2d 907, 910 (1994); *State v. Felton,* 330 N.C. 619, 641, 412 S.E.2d 344, 357 (1992) (defendant argued both federal and state constitutions); *State v. Deanes,* 323 N.C. 508, 515, 374 S.E.2d 249, 255 (1988) (defendant argued both federal and state constitutions), *cert. denied,* 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989).

On the other hand there are opinions from our Supreme Court holding that "statements falling within an exception to the general prohibition against hearsay may be admitted into evidence without violating a defendant's right to confrontation, if the evidence is reliable." *State v. Stager,* 329 N.C. 278, 317, 406 S.E.2d 876, 898 (1991) (defendant argued both federal and state constitutions); *see State v. Gainey,* 343 N.C. 79, 86, 468 S.E.2d 227, 232 (1996); *State v. Brown,* 339 N.C. 426, 438, 451 S.E.2d 181, 189 (1994), *cert. denied,* — U.S. —, 133 L. Ed. 2d 46 (1995); *State v. Roper,* 328 N.C. 337, 359, 402 S.E.2d 600, 612-13 (defendant argued both federal and state constitutions), *cert. denied,* 502 U.S. 902, 116 L. Ed. 2d 232 (1991). Although this second line of cases makes no mention of a necessity prong, in each of the cases (with the exception of *Gainey*[3]) the out-of-court declarant was unavailable and it was thus not disputed that the necessity prong was satisfied. We therefore do not read this second line of cases as abandoning the unequivocal necessity prong adopted by that Court in the first line of cases.

Although our state courts are bound to follow the United States Supreme Court's construction of the federal constitution, we are free

---

3. In this case the facts do not reveal whether the out-of-court declarant was available or unavailable.

to "construe our own constitution differently" from the construction given the federal constitution, even when the provisions are identical; provided "our citizens are thereby accorded no lesser rights than they are guaranteed by the parallel federal provision." *State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988). The federal and state constitutional provisions relating to the right to confrontation are essentially identical[4] and the case law in this state supports the conclusion that a defendant is entitled to greater protection under the Confrontation Clause of the state constitution than he is entitled to under the federal constitution. Therefore, the prosecution in a criminal trial must, as a prerequisite to the introduction of hearsay evidence, show the necessity for using the hearsay testimony and establish the inherent trustworthiness of the original declaration.

In this case, although Mrs. Jackson's testimony falls within a firmly rooted hearsay exception, because Jackson (the out-of-court declarant) was available as a witness, the trial court erred in admitting Mrs. Jackson's testimony of her conversation with Jackson.

### III

[4] We must now consider whether the trial court's erroneous admission of Mrs. Jackson's testimony was prejudicial to the defendant. Because the error is of constitutional dimensions it is "presumed to be prejudicial" and entitles the defendant "to a new trial unless the error committed was harmless beyond a reasonable doubt." *State v. Brown*, 306 N.C. 151, 164, 293 S.E.2d 569, 578, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982); *cf.* N.C.G.S. § 15A-1443(b) (1988) (violation of federal constitution is prejudicial unless harmless beyond a reasonable doubt).

Our review of the entire record reveals that the hearsay testimony of Mrs. Jackson was central to the State's case. That evidence: (1) placed a handgun in the possession of the defendant the day before the assault; (2) shows that the defendant threatened the life of Jackson with that handgun the day before the assault; and (3) reveals that Jackson was "scared" of the defendant. This evidence is inconsistent with reasonable inferences to be drawn from the defendant's testimony at trial: (1) she did not have a handgun on the day of the

---

4. The Sixth Amendment provides in pertinent part: "In all criminal prosecutions the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. Const., Amend. VI. The North Carolina Constitution provides in pertinent part: "In all criminal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony." N.C. Const. art. I, § 23.

assault; (2) Jackson had the handgun and was the aggressor on the day of the assault; and (3) she shot Jackson only in self-defense. Because of the vital importance of the hearsay testimony to the State's case, the State has failed to meet its burden of showing that the testimony was not prejudicial. In the context of a constitutional error it is only the presence of overwhelming evidence of guilt that renders the error harmless beyond a reasonable doubt. *State v. Autry*, 321 N.C. 392, 403, 364 S.E.2d 341, 348 (1988). The evidence in this case is not overwhelming.

New Trial.

Judges WALKER and McGEE concur.