STATE OF NORTH CAROLINA v. THADDEUS SWINDLER

No. 509A93

(Filed 30 December 1994)

**Evidence and Witnesses § 1009 (NCI4th)— inmate's letter—
admission under residual hearsay exception—prejudicial
error**

The trial court in a first-degree murder trial erred by admit-
ting into evidence under the residual hearsay exception of
N.C.G.S. § 8C-1, Rule 804(b)(5) a jail inmate's letter to a detective
concerning statements allegedly made by defendant about the
murder where (1) the trial court failed to make any particularized
findings of fact or conclusions of law regarding whether the let-
ter possessed "equivalent guarantees of trustworthiness"; (2) the
inmate had no personal knowledge of the events to which he
referred in the letter; (3) the inmate was not motivated to speak
the truth but rather to say what the police wanted to hear in order
to make a deal; (4) while the inmate never recanted his statement,
he refused to acknowledge at trial that he wrote the letter, that
the letter was in his handwriting, or that he wrote the address on
the envelope; (5) the inmate was unavailable because he refused
to testify; (6) the letter contained many inaccuracies; (7) the
inmate had the opportunity to obtain specific facts about the mur-
der without actually talking with defendant because he was in the
courtroom during defendant's probable cause hearing; and (8) the
trial court improperly considered corroborating evidence to sup-
port the letter's trustworthiness. Since the author of the letter
was not subject to full and effective cross-examination by defend-
ant, defendant's rights under the Confrontation Clause were vio-
lated by its admission, and the State failed to show that this error
was harmless beyond a reasonable doubt where the letter con-
tained the only evidence of defendant's motive to kill the victim;
the letter provided the greatest evidence of premeditation and

deliberation; and the letter contained the most specific admission of defendant's guilt.

**Am Jur 2d, Evidence §§ 701 et seq.**

**Residual hearsay exception where declarant unavailable: Uniform Evidence Rule 804(b)(5). 75 ALR4th 199.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Wood, J., at the 8 March 1993 Criminal Session of Superior Court, Guilford County, upon a jury verdict of guilty of first-degree murder in a noncapital trial. Heard in the Supreme Court 11 October 1994.

*Michael F. Easley, Attorney General, by Thomas S. Hicks, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant Thaddeus Swindler was charged in a proper bill of indictment with first-degree murder in the death of Joe Daniel Moore. At the noncapital trial, defendant was found guilty as charged and sentenced to life imprisonment. The evidence at trial tended to show the following. On 27 October 1992, defendant visited the Conoco station in High Point, North Carolina, numerous times in order to purchase beer. Defendant also went to the Iloco Mart, which was across the street from the Conoco Station, once that night and bought some wine. While at the Iloco Mart, defendant told the clerk that he was "p—— off at an old man." The clerk then noticed a gun in defendant's pants. Later that night the victim went to the Conoco station to buy some tobacco; defendant was also in the store at this time. Defendant was in line behind the victim and followed the victim out of the store. Soon after the two men left the Conoco station, the clerk at the Conoco station heard an ambulance go by the store.

Some time after leaving the Conoco station, and before getting home, the victim was shot three times. The victim died on Oakwood Street, near his home and in the vicinity of the convenience stores. The fatal wound was a gunshot wound to the back. Eyewitnesses testified that there were two black men involved in the shooting. One witness saw one of the black men shoot the victim in the back three times. The eyewitnesses all saw the assailants run toward Kivett

Drive after the shooting. One witness, who did not actually observe the shooting, saw defendant and another black man run past her immediately after the shooting.

While responding to the call about the murder, Detective Mark Cockerham saw Jay Bryant, Perry Hunter, and defendant get into a cab. Cockerham had been called to Jay Bryant's home on English Street on an earlier occasion; Cockerham noted that Bryant's home was in the same area as the murder. Cockerham decided to stop the cab and ask defendant and his friends some questions. After asking the men a few questions, Cockerham asked if they would come down to the police station for further questioning. At the police station, hand wipings were done on Hunter and defendant to determine if they had fired a weapon recently. The results of the wipings were not conclusive and did not establish that defendant had recently fired a weapon.

At trial, Efrem Colson, an inmate in the Guilford County jail, testified that while in jail he had heard defendant say that he had "murdered the motherf———." Also during the trial, a letter written by James Benny Quick to Detective Michael Dunn was read into evidence over defendant's objection. Quick was an inmate in jail with defendant. Quick had been in the courtroom during defendant's probable cause hearing. The letter stated:

> On 11/18 of '92, I, James Quick, [being of] full mind and body, spoke with inmate Thaddeus Swindler pertaining to a murder he claims to [have] commit[ed] on Oakwood Street, High Point, North Carolina. From my understanding of this murder from Mr. Swindler is that he and some friends had rented some type of housing duplex from Mr. J.D. Moore. However, sometime later, Mr. Moore evicted the tenant; and due to that eviction Mr. Swindler and friends plotted to kill Mr. Moore as revenge. Also, on the night of supposed murder, Mr. Swindler stated to me that he, Swindler, had seen Mr. Moore at this store and followed him home where he fired three shots at Mr. Moore and later fled toward English Road where a police officer stopped him for questioning. Ended conversation with Mr. Thaddeus Swindler. 11/19/92.

At the bottom of the letter it stated: "I have no knowledge of what this information would do for the courts or the—or the victim's family. Therefore, I ask that my name not be revealed for [the] safety of my wife and kids. Sincerely yours, James Quick."

Early in the investigation of this crime, the police believed that defendant may have rented a home from the victim and that a dispute may have developed between the two men because the victim had evicted defendant. However, the police were unable to find any evidence that supported this proposition, and this theory of motive was not mentioned at trial except as it was set forth in the letter.

Defendant testified on his own behalf that on the night of the murder, he had been drinking with Bryant and that he had gone to the Iloco and Conoco stations on several occasions that evening to buy beer. Defendant testified that he did not own a gun but that he had a black Sony Walkman on the night of the murder. Later that night, Bryant, defendant, and Hunter decided to go to an adult bookstore. Bryant and Hunter called for a cab while defendant made his last trip to the Conoco station for beer. As he was walking back from the store, defendant heard an ambulance going to Oakwood Street.

The jury was instructed that it could find defendant guilty of first-degree murder on the basis of premeditation and deliberation or find defendant not guilty. The jury found defendant guilty of first-degree murder, and defendant was sentenced to life imprisonment.

In his first assignment of error, defendant contends that the trial court erred in admitting the hearsay testimony of an out-of-court statement under the residual hearsay exception, Rule 804(b)(5). N.C.G.S. § 8C-1, Rule 804(b)(5) (1992). At trial, defendant objected to the reading of the letter written by James Benny Quick. Defendant now argues, in part, that the trial court improperly determined that the evidence was trustworthy enough to warrant introduction under Rule 804(b)(5), and admission of the statement violated his federal and state constitutional rights to confront witnesses, to a fair trial, and to due process of law. We agree.

The United States Supreme Court has noted that

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

**STATE v. SWINDLER**

[339 N.C. 469 (1994)]

*Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608 (1980) (quoting *Dutton v. Evans*, 400 U.S. 74, 89, 27 L. Ed. 2d 213, 227 (1970)). Hearsay evidence that does not fall within a firmly rooted exception is deemed "presumptively unreliable and inadmissible for Confrontation Clause purposes." *Lee v. Illinois*, 476 U.S. 530, 543, 90 L. Ed. 2d 514, 528 (1986), *quoted in Idaho v. Wright*, 497 U.S. 805, 818, 111 L. Ed. 2d 638, 654 (1990).

Rule of Evidence 804(b)(5) provides for the admission of hearsay statements when the declarant is unavailable and the statement is not covered by any specific exception, but is determined to have "equivalent circumstantial guarantees of trustworthiness." N.C.G.S. § 8C-1, Rule 804(b)(5). "In *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986), this Court articulated the guidelines for admission of hearsay testimony under Rule 804(b)(5)." *State v. Peterson*, 337 N.C. 384, 391, 446 S.E.2d 43, 48 (1994). Initially, the trial court must find that the declarant is unavailable. *Triplett*, 316 N.C. at 8, 340 S.E.2d at 740. A declarant is deemed unavailable if he "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." N.C.G.S. § 8C-1, Rule 804(a)(2) (1992). In this case, the declarant, James Quick, was put on the stand on two occasions and refused to testify. Quick stated numerous times that he pled the Fifth. Even when ordered to testify by the trial court, Quick refused to do so. He even refused to acknowledge whether he had written the letter at issue. The trial court then concluded that James Quick was "unavailable."

After determining if a declarant is unavailable, the trial court must then determine

(1) Whether the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars;

(2) That the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4);

(3) That the statement possesses "equivalent circumstantial guarantees of trustworthiness";

(4) That the proffered statement is offered as evidence of a material fact;

(5) Whether the hearsay is "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable means"; and

**STATE v. SWINDLER**

[339 N.C. 469 (1994)]

(6) Whether "the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence."

*State v. Ali,* 329 N.C. 394, 408, 407 S.E.2d 183, 191-92 (1991) (citing *Triplett,* 316 N.C. at 9, 340 S.E.2d at 741 (quoting N.C.G.S. § 8C-1, Rule 804(b)(5) (1986))).

In determining whether a hearsay statement possesses "equivalent circumstantial guarantees of trustworthiness" so that it may be admitted under Rule 804(b)(5), the court should consider

· (1) the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth; (3) whether the declarant recanted; and (4) the reason, within the meaning of Rule 804(a), for the declarant's unavailability.

*State v. Nichols,* 321 N.C. 616, 624, 365 S.E.2d 561, 566 (1988). The trial court should make findings of fact and conclusions of law when determining if an out-of-court hearsay statement possesses the necessary circumstantial guarantee of trustworthiness to allow its admission. *See State v. Deanes,* 323 N.C. 508, 515, 374 S.E.2d 249, 255 (1988), *cert. denied,* 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989); *State v. Triplett,* 316 N.C. at 10, 340 S.E.2d at 742.

In this case, the trial court failed to make any particularized findings of fact or conclusions of law regarding whether the letter possessed "equivalent circumstantial guarantees of trustworthiness." In ruling that the letter had characteristics of trustworthiness so that it was admissible, the court simply stated that: "I think that there are some indications that this is a truthful statement." This conclusion alone is an inadequate determination that a statement contains the "equivalent circumstantial guarantees of trustworthiness" necessary to allow its admission under the residual hearsay rule.

Additionally, reviewing this statement in light of the four considerations to determine trustworthiness as set forth in *Nichols,* the letter should not have been admitted. 321 N.C. at 624, 365 S.E.2d at 566. First, we note that Quick had no personal knowledge of the events to which he referred in the letter. No evidence suggests that Quick was anywhere in the vicinity of the murder when it occurred. Second, Quick was not motivated to speak the truth, but rather was motivated to say what the police wanted to hear. Quick had many past convictions and was in jail on pending charges at the time of defendant's trial. When Quick talked to Detective J.L. Grubb, he wanted to know

what the police "could do for him" with regard to his pending charge. Quick obviously wanted to make some type of deal with the police. The motivation present in this case was not for Quick to speak the truth, but rather for him to say what the police wanted to hear, so he could benefit. Third, while Quick never recanted his statement, when questioned at trial he refused to acknowledge that he wrote the letter, that the letter was in his handwriting, or even that he wrote the address on the envelope in which the letter came. Finally, Quick was unavailable because he had refused to testify. This Court has noted that "if the declarant is unavailable under Rule 804(a)(2) because he '[p]ersists in refusing to testify concerning the subject matter of his statement despite a court order to do so' the court must weigh this as a factor against admitting declarant's statement." *State v. Nichols*, 321 N.C. at 625 n.2, 365 S.E.2d at 566-67 n.2.

The letter at issue contained many inaccuracies. The letter stated that defendant had rented housing from the victim and had been evicted and that the eviction was the reason defendant had shot the victim. Detective Grubb acknowledged that originally the police believed defendant had been evicted by the victim. However, no evidence had developed to support this fact. Detective Grubb indicated that this portion of the letter was "totally without basis." The letter also indicated that the assailants had run toward English Road after shooting Mr. Moore. However, all the eyewitnesses stated that Mr. Moore's assailants ran toward Kivett Drive, which was in the opposite direction from English Road. The letter also lacked trustworthiness because Quick had the opportunity to obtain specific facts regarding the murder without actually talking to the defendant. Quick was in court with defendant during defendant's probable cause hearing.

We also note that one of the reasons the trial court admitted the letter into evidence was that portions of the letter were corroborated by other evidence that had been presented. However, "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Idaho v. Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 657. Corroborating evidence should not be used to support a hearsay statement's particularized guarantee of trustworthiness. *Id.* at 823, 111 L. Ed. 2d at 657. For the foregoing reasons, we conclude that the letter simply did not contain the "inherent trustworthiness" necessary to allow its admission.

We must now consider whether the trial court's erroneous admission of Quick's out-of-court statement was prejudicial to defendant.

> A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

N.C.G.S. § 15A-1443(b) (1988).

The declarant of the letter not having been subject to full and effective cross-examination by defendant, defendant's rights under the Confrontation Clause were violated. *See California v. Green*, 399 U.S. 149, 158, 26 L. Ed. 2d 489, 497 (1970). Thus, the State must show that any error was harmless beyond a reasonable doubt, a burden which the State, in our view, cannot carry in the present case. The letter contained the only evidence of defendant's motive to kill the victim. The letter also provided the greatest evidence that the murder was committed after premeditation and deliberation. In addition, the letter contained the most specific admission of defendant's guilt in the murder. One other witness testified that defendant had said he had killed the "motherf———," but that witness did not know where the murder to which defendant was referring had occurred. Additionally, multiple witnesses testified that they saw two black men running away from the body, and one witness saw a black man shoot the victim and run away. However, only one witness actually identified defendant as running away from the body; that particular witness did not see defendant shoot the victim. On this record we cannot conclude as a matter of law that the error was harmless beyond a reasonable doubt.

Accordingly, the verdict and judgment below are vacated and defendant is awarded a new trial.

NEW TRIAL.