STATE OF NORTH CAROLINA v. ELIZABETH WASHINGTON JACKSON

No. 244PA97

(Filed 30 July 1998)

1. **Constitutional Law § 6 (NCI4th)— parallel provisions of state and federal Constitutions—interpretation of state Constitution**

   The North Carolina Supreme Court may interpret our state Constitution differently than the United States Supreme Court interprets even identical provisions of the federal Constitution. Nevertheless, because the federal Constitution is binding on the states, the rights it guarantees must be applied to every citizen by the courts of North Carolina, so no citizen will be "accorded lesser rights" no matter how the state Constitution is construed. For all practical purposes, therefore, the only significant issue for the North Carolina Supreme Court when interpreting a provision of our state Constitution paralleling a provision of the federal Constitution will always be whether the state Constitution guarantees additional rights to the citizen above and beyond those guaranteed by the parallel federal provision.

2. **Evidence and Witnesses § 927 (NCI4th)— hearsay— Confrontation Clause—necessity and trustworthiness— inferences in prior decisions disapproved**

   Any possible inferences from prior decisions that the Confrontation Clause of the North Carolina Constitution requires that no hearsay evidence be admitted unless the prosecution has complied with a two-prong test by establishing (1) necessity and (2) reliability or trustworthiness were mere *dicta* and are disapproved.

3. **Constitutional Law § 340 (NCI4th)— N.C. Constitution— Confrontation Clause—application of decisions construing U.S. Constitution**

   The North Carolina Supreme Court finds the reasoning of the United States Supreme Court when construing the Confrontation Clause of the Sixth Amendment persuasive and adopts and shall apply that reasoning for purposes of resolving issues arising under the Confrontation Clause of the North Carolina Constitution.

STATE v. JACKSON

[348 N.C. 644 (1998)]

**4. Evidence and Witnesses § 927 (NCI4th)— hearsay—firmly rooted exception—no violation of Confrontation Clause**

Where hearsay proffered by the prosecution comes within a firmly rooted exception to the hearsay rule, the Confrontation Clause of the North Carolina Constitution is not violated by its admission even though no particularized showing is made as to the necessity for using such hearsay or as to its reliability or trustworthiness. N.C. Const. art. I, § 23.

**5. Evidence and Witnesses §§ 876, 927 (NCI4th)— hearsay—state of mind exception—no violation of Confrontation Clause**

The admission of testimony by an assault victim's mother under the firmly rooted state of mind exception to the hearsay rule without a showing of necessity and trustworthiness did not violate the Confrontation Clause of the North Carolina Constitution. N.C.G.S. § 8C-1, Rule 803(3).

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 126 N.C. App. 129, 484 S.E.2d 405 (1997), setting aside a judgment entered by Martin (Jerry Cash), J., on 16 November 1995 in Superior Court, Forsyth County, and awarding defendant a new trial. Heard in the Supreme Court 17 December 1997.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State-appellant.*

*The Law Offices of J. Darren Byers, P.A., by J. Darren Byers and Guy B. Oldaker III, for defendant-appellee.*

MITCHELL, Chief Justice.

On 24 April 1995, defendant was indicted by a Forsyth County grand jury for assault with a deadly weapon with intent to kill inflicting serious injury in violation of N.C.G.S. § 14-32(a). She was tried at the 13 November 1995 Criminal Session of Superior Court, Forsyth County. The jury found defendant guilty as charged. On 16 November 1995, after making findings in aggravation and mitigation, the trial court entered judgment sentencing defendant to a term of from 108 to 139 months' imprisonment. Defendant appealed to the Court of Appeals. The Court of Appeals concluded that the trial court had erred by admitting hearsay evidence under the state of mind exception to the hearsay rule in violation of the Confrontation Clause of the

STATE v. JACKSON

[348 N.C. 644 (1998)]

North Carolina Constitution and ordered a new trial. This Court allowed the State's petition for discretionary review.

The evidence at trial tended to show *inter alia* that on the morning of 31 October 1994, defendant Elizabeth Jackson shot her husband General Jackson five times with a .25-caliber pistol. The shooting occurred at the Evergreen Cemetery. The victim, who survived the shooting, was later found by a cemetery employee. A police officer who arrived at the scene identified the victim, determined that he had been shot in the head and chest, and found five spent cartridges on the ground nearby.

At no time after shooting her husband did defendant call an ambulance or attempt to get help for him. Following the shooting, defendant, carrying her child, walked out of the cemetery. She left her wounded husband lying in some weeds in a wooded area of the cemetery and their car stuck in the mud. Defendant got a ride home and called her mother. Defendant said that the victim had tried to kill her and that she had shot him. Defendant then called her friend Tanzia to pick her up to take her to retrieve the car. When Tanzia arrived, defendant had a shovel and told Tanzia that her car was stuck at the cemetery. They looked for a wrecker to pull her out of the mud but were unable to find one.

Failing to find a wrecker, Tanzia drove past the cemetery while returning to defendant's home. Tanzia and defendant saw numerous emergency vehicles at the cemetery as they drove by. Defendant then "started crying," "saying she shot [her husband], she killed him," and had Tanzia take her to a magistrate. Defendant was hysterical and crying at the magistrate's office, where she surrendered a .25-caliber Raven pistol and stated that she had killed a man. It was later determined that the five spent cartridges found at the cemetery were fired from the pistol that defendant brought to the magistrate's office.

The victim was taken to Baptist Hospital where he stayed for about two months. He had suffered bullet wounds to the head, the right jaw, the left side of his neck, the left side of his chest, and the left lower back. The victim's injuries left him with impaired communication abilities. At the time of the trial, he was unable to speak in complete sentences. He responded to questions requiring "yes" or "no" answers inconsistently in that he gave inappropriate responses half of the time. However, on *voir dire*, the trial court ruled that the victim was "competent to testify in this matter as a witness." The victim was present for the trial but was not called as a witness by either party.

STATE v. JACKSON

[348 N.C. 644 (1998)]

The State called the victim's mother, Lillian Jackson, to testify about a conversation she had with her son on 30 October 1994, the day before the shooting. The trial court conducted a *voir dire* and concluded that her testimony was hearsay but relevant and admissible under the state of mind exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 803(3) (1992). The trial court further concluded under Rule 403 of the North Carolina Rules of Evidence that the probative value of her testimony outweighed any danger of unfair prejudicial effect. N.C.G.S. § 8C-1, Rule 403 (1992).

Lillian Jackson testified at trial that her son, the victim General Jackson, had told her that late on the night of 29 October 1994, he and defendant had an argument. Later, in the early morning hours of 30 October 1994, he saw defendant's car in a church parking lot and stopped to speak with her. Defendant put a gun to his head and asked if that was "what he wanted." She then put the gun to her head and asked "or is this what you want." The victim then left the church parking lot, went to his mother's house, and told her what had just happened. The victim told her that defendant was "serious about hurting him and breaking up with him" and that "she had scared him so bad" that he was going downtown to file for divorce the next day.

In support of its assignment of error, the State argues that North Carolina's Confrontation Clause does not afford a defendant more protection than its federal counterpart. Therefore, the State contends that the Court of Appeals erred by awarding defendant a new trial.

Defendant argues that the Court of Appeals was correct in holding that admission of Lillian Jackson's testimony under the state of mind exception violated the Confrontation Clause of the North Carolina Constitution and required that defendant have a new trial. N.C. Const. art. I, § 23. In making this argument, defendant contends that North Carolina's Confrontation Clause requires that the trial court make a finding of necessity before hearsay can be admitted against a defendant in a criminal trial, even if the hearsay falls within a firmly rooted exception to the hearsay rule. Therefore, defendant contends, the Confrontation Clause of the North Carolina Constitution is more protective of an individual's rights in this regard than its federal counterpart. The Court of Appeals agreed with defendant on this point and ordered a new trial. For the reasons that follow, we hold that the Confrontation Clause of the North Carolina Constitution does not require a showing or finding of necessity before hearsay testimony may properly be admitted under a *firmly rooted* exception to the hearsay rule.

**STATE v. JACKSON**

[348 N.C. 644 (1998)]

**[1]** Questions concerning the proper construction and application of the North Carolina Constitution can be answered with finality only by this Court. *State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 479 (1989); *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984). We have said that even where provisions of the state and federal Constitutions are identical, "we have the authority to construe our own constitution differently from the construction by the United States Supreme Court of the Federal Constitution, as long as our citizens are thereby accorded no lesser rights than they are guaranteed by the parallel federal provision." *State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988). Strictly speaking, however, a state may still construe a provision of its constitution as providing less rights than are guaranteed by a parallel federal provision. Nevertheless, because the United States Constitution is binding on the states, the rights *it* guarantees must be applied to every citizen by the courts of North Carolina, so no citizen will be "accorded lesser rights" no matter how we construe the state Constitution. For all practical purposes, therefore, the only significant issue for this Court when interpreting a provision of our state Constitution paralleling a provision of the United States Constitution will always be whether the state Constitution guarantees additional rights to the citizen above and beyond those guaranteed by the parallel federal provision. In this respect, the United States Constitution provides a constitutional floor of fundamental rights guaranteed all citizens of the United States, while the state constitutions frequently give citizens of individual states basic rights in addition to those guaranteed by the United States Constitution.

States remain free to interpret their own constitutions in any way they see fit, including constructions which grant a citizen rights where none exist under the federal Constitution. *Lowe v. Tarble*, 313 N.C. 460, 462, 329 S.E.2d 648, 650 (1985). In construing the North Carolina Constitution, this Court is not bound by the decisions of federal courts, including the United States Supreme Court. *Preston*, 325 N.C. at 449-50, 385 S.E.2d at 479. However, we give the most serious consideration to those decisions, and "in our discretion we may conclude that the reasoning of such decisions is persuasive." *Id.* at 450, 385 S.E.2d at 479. In such cases, we will follow the reasoning of the federal court and apply it in construing our state constitutional provision. Bearing these principles in mind, we turn to a review of the decisions of the United States Supreme Court construing the Confrontation Clause of the Sixth Amendment to the United States Constitution.

## United States Constitution

The relationship between exceptions to the hearsay rule and the Confrontation Clause has been the subject of considerable discourse. While the Confrontation Clause and rules of hearsay may protect similar values, it would be an erroneous simplification to conclude that the Confrontation Clause is merely a codification of hearsay rules. *California v. Green*, 399 U.S. 149, 155, 26 L. Ed. 2d 489, 495 (1970). Evidence admitted under an exception to the hearsay rule may still violate the Confrontation Clause. *Id.* at 155-56, 26 L. Ed. 2d at 495-96. The Confrontation Clause has its roots in the English common law practice of trying prisoners using the affidavits and sworn statements of witnesses or "accusers" rather than having the witnesses brought before the court to testify in the presence of the accused. *Id.* at 156-57, 26 L. Ed. 2d at 496. Sir Walter Raleigh was tried for and convicted of treason in this fashion. *Id.* at 156-57 n.10, 26 L. Ed. 2d at 496 n.10. The Confrontation Clause seems to have been adopted in part to protect against this practice. *Id.* at 157-58, 26 L. Ed. 2d at 496-97.

In 1980, the United States Supreme Court decided *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597 (1980). It was frequently read as adopting a rule that the Confrontation Clause of the Sixth Amendment established two requirements for the admission of any hearsay evidence. First, "[i]n the usual case . . . , the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Id.* at 65, 65 L. Ed. 2d at 607. Second, the hearsay sought to be introduced must be marked with such trustworthiness that there is no material departure from the reason for the general rule that the defendant have an opportunity to confront the witnesses against him. *Id.* The Court did expressly state, however, that such trustworthiness or reliability "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 65 L. Ed. 2d at 608.

Six years later, the Supreme Court attempted to clarify its statement of the law in *Roberts* with regard to the Confrontation Clause. *United States v. Inadi*, 475 U.S. 387, 89 L. Ed. 2d 390 (1986). In response to an inferior federal court's conclusion in *Inadi* that *Roberts* had established a "clear constitutional rule" requiring a showing of unavailability of a nontestifying declarant before any out-of-court statement by the defendant could be admitted, the Supreme Court said that *Roberts* "does not stand for such a wholesale revision of the law of evidence, nor does it support such a broad interpreta-

tion of the Confrontation Clause." *Id.* at 392, 89 L. Ed. 2d at 396. The Court pointed out that in the *Roberts* opinion, it had "disclaimed any intention of proposing a general answer to the many difficult questions arising out of the relationship between the Confrontation Clause and hearsay." *Id.* The Court also cited several instances of limiting language in the *Roberts* opinion which it said showed that

> *Roberts* should not be read as an abstract answer to questions not presented in that case, but rather as a resolution of the issue the Court said it was examining: "the constitutional propriety of the introduction in evidence of the preliminary hearing testimony of a witness not produced at the defendant's subsequent state criminal trial."

*Id.* at 392-93, 89 L. Ed. 2d at 397 (quoting *Roberts*, 448 U.S. at 58, 65 L. Ed. 2d at 602). The Court went on to say that *Roberts* had reaffirmed the long-standing unavailability requirement *as applied to former sworn testimony* but did not support the proposition that the requirement's reach had been extended to all hearsay. *Id.* at 393-94, 89 L. Ed. 2d at 397-98.

The Court then proceeded to distinguish its application of the unavailability requirement to former testimony in *Roberts* from the application of that requirement to co-conspirators' out-of-court prior statements, the issue before it in *Inadi*. *Id.* at 394, 89 L. Ed. 2d at 398. The Court reasoned that former sworn testimony

> seldom has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence.

*Id.* The Court reasoned in *Inadi* that the principle that in-court testimony is the best evidence and should be favored does not apply to co-conspirator statements, because the statements of co-conspirators illuminate the nature and context of the conspiracy and therefore cannot be reproduced by in-court testimony. *Id.* at 395, 89 L. Ed. 2d at 398. Also, at trial, the co-conspirators are no longer partners in crime with a common goal. As defendants, they may even

STATE v. JACKSON

[348 N.C. 644 (1998)]

have conflicting interests which render their in-court testimony less reliable than their out-of-court statements made in furtherance of the conspiracy. *Id.* at 395, 89 L. Ed. 2d at 398-99. Therefore, the unavailability requirement is of little benefit in ensuring that the better evidence is admitted in the context of co-conspirator statements. *Id.* at 396, 89 L. Ed. 2d at 399. Ultimately, the application of the unavailability requirement to co-conspirator statements would yield few benefits and would impose significant burdens. *Id.* at 398-99, 89 L. Ed. 2d at 400-01. In summary, the Court held in *Inadi* that the Confrontation Clause of the Sixth Amendment did not call for an unavailability requirement in cases of co-conspirator statements and disavowed a reading of *Roberts* that would apply the unavailability requirement to all hearsay. *Id.* at 400, 89 L. Ed. 2d at 401.

The United States Supreme Court again found it necessary to clarify the relationship between hearsay and the Confrontation Clause of the Sixth Amendment in *White v. Illinois*, 502 U.S. 346, 116 L. Ed. 2d 848 (1992). There, the issue was whether hearsay admitted under the excited utterance and the statement for medical treatment exceptions violated the Confrontation Clause. *Id.* at 348-49, 116 L. Ed. 2d at 854-55. The Court held that the hearsay in question did not violate the Confrontation Clause. *Id.* at 357, 116 L. Ed. 2d at 860. In reaching this conclusion, the Court reaffirmed its analysis in *Inadi* and applied it to the facts of *White*. In its discussion, the Court pointed out that under *Inadi*, the unavailability requirement was limited to prior testimony. *Id.* at 354, 116 L. Ed. 2d at 858. The Court again distinguished former in-court testimony from hearsay admitted under a firmly rooted exception and, in the process, illuminated the relative weakness of former in-court testimony. *Id.* Finally, the Court reiterated that in cases of firmly rooted exceptions to the rule against hearsay, the benefits of the unavailability requirement would be few and the burdens would be substantial. *Id.* at 355, 116 L. Ed. 2d at 858-59. The Court summarized its reasoning and holding by stating:

> The preference for live testimony in the case of statements like those offered in *Roberts* is because of the importance of cross-examination, "the greatest legal engine ever invented for the discovery of truth." *Green*, 399 U.S. at 158, 26 L. Ed. 2d [at 497]. Thus courts have adopted the general rule prohibiting the receipt of hearsay evidence. *But where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.*

*White*, 502 U.S. at 356, 116 L. Ed. 2d at 859 (emphasis added) (citation modified). *White*, therefore, seems clearly to limit the application of the unavailability requirement to cases involving former testimony. *White* resolves the conflict between the Confrontation Clause and exceptions to the rule against hearsay in favor of admitting hearsay that falls within a firmly rooted exception, even in cases where there is no showing of any particular necessity for or trustworthiness of the hearsay evidence.

### North Carolina Constitution

North Carolina's rule prohibiting hearsay and the exceptions thereto are now completely statutory creations. N.C.G.S. § 8C-1, Rules 801-806 (1992). Defendant contends, and the Court of Appeals held, that the trial court's admission of the victim's mother's testimony under the state of mind exception in the present case violated defendant's rights under the Confrontation Clause of the North Carolina Constitution. N.C. Const. art. I, § 23.

[2] Defendant contends that prior decisions of this Court have indicated that if the prosecution introduces hearsay evidence of any type, it violates the Confrontation Clause of the North Carolina Constitution unless it complies with a two-prong constitutional test for the admission of hearsay by establishing (1) necessity, and (2) trustworthiness. *E.g.*, *State v. Swindler*, 339 N.C. 469, 472-73, 450 S.E.2d 907, 910 (1994) (defendant argued both federal and state Confrontation Clauses); *State v. Peterson*, 337 N.C. 384, 390, 446 S.E.2d 43, 47-48 (1994) (same); *State v. Felton*, 330 N.C. 619, 640, 412 S.E.2d 344, 357 (1992) (same); *State v. Deanes*, 323 N.C. 508, 514-15, 374 S.E.2d 249, 254 (1988) (same), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989). We do not agree. First, we note that in each of those cases, the hearsay evidence was admitted under the residual or "catchall" exceptions established by Rule 803(24) and Rule 804(b)(5). Each of those rules expressly provides for the admission of residual hearsay only if both trustworthiness and necessity are established. N.C.G.S. § 8C-1, Rules 803(24), 804(b)(5); *see State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986); *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). "Necessity" in this context is not limited to a showing of unavailability, such as when the declarant is dead, out of the jurisdiction, or insane. It also includes situations in which the court "cannot expect, again, or at this time, to get *evidence of the same value* from the same or other sources." 5 John Henry Wigmore, *Evidence*

§ 1421(2) (James H. Chadbourn rev. 1974); *see also State v. Smith*, 315 N.C. 76, 95, 337 S.E.2d 833, 846 (1985) (quoting Rule 803(24), which provides that hearsay is admissible if it "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts"). Further, in each of our cases relied upon by defendant, this Court dealt with Sixth Amendment challenges to the admission of hearsay, as well as challenges under the North Carolina Constitution. The United States Supreme Court has indicated that "residual" hearsay exceptions are not "firmly rooted" exceptions to the general rule against hearsay and therefore do not relieve the prosecution of the duty under the Confrontation Clause of the Sixth Amendment to establish the necessity for and reliability or trustworthiness of the hearsay evidence. *Idaho v. Wright*, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 653-54 (1990); *see Peterson*, 337 N.C. at 392, 446 S.E.2d at 49. In none of our cases cited—*Swindler, Peterson, Felton*, and *Deanes*—was it necessary for us to decide whether the Confrontation Clause of the North Carolina Constitution requires that no hearsay evidence whatsoever be admitted unless the prosecution has complied with a two-prong test by establishing (1) necessity, and (2) reliability or trustworthiness. Any possible inferences to that effect in those decisions, therefore, were mere *dicta* and are disapproved.

**[3],[4]** Importantly, in addressing the state constitutional issue presented here, we note that in our analyses of Confrontation Clause issues in *Swindler, Peterson, Felton*, and *Deanes*, we cited and relied on the decision of the United States Supreme Court in *Roberts* or North Carolina cases which relied on *Roberts* for their analysis of Confrontation Clause issues. *Swindler*, 339 N.C. at 472-73, 450 S.E.2d at 910; *Peterson*, 337 N.C. at 392, 446 S.E.2d at 49; *Felton*, 330 N.C. at 641, 412 S.E.2d at 357; *Deanes*, 323 N.C. at 515, 374 S.E.2d at 255. Thus, it is apparent that we have relied heavily upon the United States Supreme Court's interpretation of the Confrontation Clause of the Sixth Amendment in cases in which defendants have also raised confrontation issues under the Confrontation Clause of the North Carolina Constitution. As we have noted, we are free to interpret our state Constitution differently than the United States Supreme Court interprets even identical provisions of the federal Constitution. It suffices here, however, to state that we find the reasoning of the Supreme Court of the United States when construing the Confrontation Clause of the Sixth Amendment in *Inadi* and *White* persuasive, and we adopt and shall apply that reasoning for purposes

of resolving issues arising under the Confrontation Clause of the North Carolina Constitution. Specifically, we agree that the

> preference for live testimony in the case of statements like those offered in *Roberts* [prior testimony under oath] is because of the importance of cross-examination, "the greatest legal engine ever invented for the discovery of truth." *Green*, 399 U.S. at 158, 26 L. Ed. 2d [at 497]. Thus courts have adopted the general rule prohibiting the receipt of hearsay evidence. But *where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.*

*White*, 502 U.S. at 356, 116 L. Ed. 2d at 859 (emphasis added) (citation modified). This reasoning is equally sound when construing the Confrontation Clause of the North Carolina Constitution. Accordingly, we hold that where hearsay proffered by the prosecution comes within a firmly rooted exception to the hearsay rule, the Confrontation Clause of the North Carolina Constitution is not violated, even though no particularized showing is made as to the necessity for using such hearsay or as to its reliability or trustworthiness.

**[5]** In the present case, the testimony of the victim's mother was admitted into evidence under the state of mind exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 803(3). The state of mind exception is a "firmly rooted" exception to the hearsay rule. *State v. Stager*, 329 N.C. 278, 318, 406 S.E.2d 876, 899 (1991); *State v. Faucette*, 326 N.C. 676, 684, 392 S.E.2d 71, 75 (1990). Therefore, the Confrontation Clause of the North Carolina Constitution was not violated.

In this case, the Court of Appeals took the view that the Confrontation Clause of the North Carolina Constitution entitled defendant to greater protection than that accorded him by the United States Constitution. The Court of Appeals stated that "the prosecution in a criminal trial must, as a prerequisite to the introduction of hearsay evidence, show the necessity for using the hearsay testimony and establish the inherent trustworthiness of the original declaration." *State v. Jackson*, 126 N.C. App. 129, 138, 484 S.E.2d 405, 411 (1997). As a result, the Court of Appeals concluded that "although Mrs. [Lillian] Jackson's testimony falls within a firmly rooted hearsay exception, because [General] Jackson (the out-of-court declarant) was available as a witness, the trial court erred in admitting Mrs.

Jackson's testimony of her conversation with [General] Jackson." *Id.* For the reasons previously discussed in this opinion, the Court of Appeals erred in this conclusion and in awarding defendant a new trial. The decision of the Court of Appeals is reversed, and this case is remanded to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.