STATE OF NORTH CAROLINA v. AARON PRETTY

No. COA98-1094

(Filed 3 August 1999)

## 1. Evidence— expert—underlying basis of opinion—voir dire not required—no prejudice from delay

The trial court did not err in failing to allow defense counsel to voir dire the State's expert witnesses before they testified at trial to determine the underlying basis of their opinion since the disclosure of these facts occurred during direct and cross-examination testimony, and defendant failed to show any prejudice from this delay.

## 2. Evidence— hearsay—unavailable child—catchall exception

The trial court did not err in admitting the hearsay statements of the five-year-old child sex abuse victim in the trial of her father because the findings support the trial court's six-step inquiry assessing that the statements were admissible under the Rule 804(b)(5) catchall exception.

## 3. Constitutional Law— hearsay—unavailable witness—right to confrontation not violated—incompetency of child— necessary evidence—trustworthiness satisfied

The trial court did not violate defendant-father's constitutional right to confront the five-year-old child sex abuse victim when it admitted the child's hearsay statements because the unavailability of the child was due to her incompetency and the evidentiary importance of the child's statements demonstrate their necessity. Further, the child victim's personal knowledge of the underlying incident and the fact she never recanted her statements satisfied the circumstantial guarantees of trustworthiness.

## 4. Constitutional Law— effective assistance of counsel—failure to object—opened the door

Defense counsel's failure to object to the social worker's testimony that the child sex abuse victim's statements were believable did not constitute ineffective assistance of counsel where defense counsel opened the door to this testimony by attempting to show the child's sexual knowledge resulted from a prior incident of sexual abuse occurring at her mother's home as opposed to the incident for which defendant-father was being tried.

Judge GREENE concurring in the result.

Appeal by defendant from judgment entered 21 September 1993 by Judge J.B. Allen, Superior Court, Durham County. Heard in the Court of Appeals 8 June 1999.

*Mark E. Edwards for the defendant.*

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

WYNN, Judge.

The State of North Carolina tried Aaron Pretty in 1991 on charges of first-degree-statutory rape, first-degree-statutory sex offense, taking indecent liberties with a minor, and incest with his five-year-old daughter. Upon his conviction on all charges, the trial judge sentenced him to consecutive-life sentences for the rape and sex offenses, and concurrent sentences of ten years for indecent liberties and fifteen years for incest. Our review of his trial finds no error in either his conviction or sentence.

The evidence presented at trial showed that at the time of the alleged misconduct, the defendant's daughter lived in a foster home. The Durham County Department of Social Services had removed the child from her mother's custody due to allegations of sexual abuse by another man while the child stayed with her mother. However, a juvenile court ordered the Durham County Department of Social Services to allow the defendant to have unsupervised visits with the child.

Following one of those visits, the child's foster mother became concerned that the child had been sexually abused. She testified at trial that while bathing the child she noticed that the child's vaginal area was red. She further testified that the child, referring to the defendant as "June", told her that "it hurt down there where June was playing" and also stated that during her visit the defendant got on top of her, "played mama and daddy", and put his private part in her vagina.

According to the foster mother, the child's behavior substantially changed following this unsupervised visit. In particular, the child began having nightmares during which time she would say: "Stop, June." Additionally, the child, who had previously been shy and manageable, began misbehaving at home and school. In fact, a school counselor testified that as a result of a drastic change in her behav-

ior—including the child's actions of crying very easily and touching the private parts of little boys—the school began having major problems with the child in January 1991.

On 31 January 1991, the Duke Child Protection Team performed a medical evaluation of the child which revealed abnormal physical findings consistent with penile penetration of the vagina. Further physical findings included: a vaginal discharge; the hymenal tissue was narrowed and the rim thickened; the vaginal opening was 8-9mm, which was the upper limit or greater than upper limit of normal for a five-year-old child. Based on these physical findings, Dr. Thomas Frothingham, the Director of the Duke Child Protection Team, concluded that the findings were consistent with an evaluation that the child had been sexually abused.

Following this evaluation, the Durham County Department of Social Services reported the findings to the Durham Police Department. Thereafter, Detective McDonald Vick, of the Durham Police Department, along with a female officer, interviewed the child. During this interview, the child used anatomically correct dolls to show the officers what had occurred during her unsupervised visit with the defendant. At trial, Detective Vick demonstrated the child's use of the anatomical dolls which included the placing of the "daddy" doll on top of the "child" doll with no clothes and moving back and forth, to simulate vaginal intercourse and digital penetration.

Jeanne Neimeyer, a clinical social worker at the Duke Child Protection Team, also testified as to the child's statements made to her during two interview sessions which occurred in March of 1991. She testified that the child told her that she slept with her daddy in his bed during this visit and while in the bed her daddy put "his dink-a-link right there" pointing to the genital area of the girl doll. During her cross examination, Ms. Neimeyer stated: "I wouldn't expect a child to make a statement that [her] daddy put [his penis] in [her] mouth because a child wants to protect the people that she's close to and the people that take care of her. So I wouldn't have expected her to say it if it didn't happen."

Notwithstanding the defense counsel's objections to the child's out-of-court statements made to the school counselor, police detective, and social worker, the trial court allowed these statements after determining that the child was incompetent as a witness and unavailable to testify.

Moreover, the trial court denied defendant's pretrial motion to *voir dire* each of the State's expert witnesses—on the underlying basis of their opinion—before the witnesses gave their testimony. The court, however, informed counsel that he could *voir dire* the witnesses as to their qualifications.

The trial court also denied the defendant's motion to dismiss the charges against him.

On appeal, the defendant contends that: (1) his pretrial request for *voir dire* of the State's expert witnesses should have been granted; (2) his motion to dismiss should have been granted; (3) the child's hearsay statements made to the school counselor, police detective, and social worker should not have been admitted into evidence; and (4) his counsel's failure to object to the social worker's testimony that the child was believable constituted ineffective assistance of counsel. We address each respectively.

I.

[1] Defendant first argues that the trial court should have allowed his counsel to *voir dire* the State's expert witnesses before they testified at trial to determine the underlying basis of their opinion. We disagree.

Under North Carolina law, an expert may testify,

in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requires otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

N.C. Gen. Stat. 8C-1, rule 705 (1992).

Thus, while rule 705 provides for the disclosure of the underlying facts or data forming the basis of expert testimony upon an adverse party's request, it permits the trial court to require such disclosure either on direct or cross-examination, or on *voir dire* before stating the opinion. In the case *sub judice*, the disclosure of the underlying facts or data forming the basis of the experts' opinions occurred during direct and cross-examination testimony. Moreover, the defendant has not shown any prejudice from the delay in obtaining this evidence

during direct and cross-examination testimony. Accordingly, we find no merit to defendant's first assignment of error.

## II.

Next, the defendant contends that the trial court should have dismissed the charges against him because the delay in receiving access to the Durham Community Guidance Clinic's records violated his constitutional right to due process by hindering his preparation of a defense.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963), the United States Supreme Court held that the prosecution's suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. *See id.* However, a general request for all *Brady* information or all exculpatory information does not create a prosecutorial duty to respond with the production of all evidence. *See United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct 2392, 2399, 49 L.Ed.2d 342, 351-52 (1976).

Before the subject trial, the defendant moved for the production of the confidential records of the Durham Community Guidance Clinic. However, since the State did not have access to these records, the trial court ordered and reviewed *in camera* the files of the Durham County Department of Social Services which contained the Durham Community Guidance Clinic's records. Upon its review, the trial court determined that most of these records were not relevant to the matter before the court. Nonetheless, the trial court allowed both the prosecutor and the defense to inspect all of the records. The trial court also allowed the defense to review the State's subpoenaed records from the Durham Community Guidance Center received after the defendant's pre-trial discovery motion. In fact, these records were available to the defense during the weekend recess of trial.

In denying the defense's motion, the trial court determined that the defendant had ample time to review the records and offered him more time if needed, stating:

And the court finds that counsel for the defendant has had an opportunity, an adequate opportunity to review any and all records concerning this matter. And the Court further finds as fact that if the defendant needs a delay in trial to go over these

records more in order to recall any witnesses to question them about any of these records the Court will be willing to do so.

Thus, the defendant had ample access and adequate time to review the Durham Community Guidance Center's records in preparing a defense. Because he has failed to show that the State withheld exculpatory evidence in violation of *Brady*, we reject defendant's second assignment of error.

### III.

**[2]** The defendant next asserts that the admission of the child's hearsay statements made to the school counselor, police detective, and social worker violated his constitutional right to confront witnesses. He argues first that the trial court erred in finding that the child was unavailable to testify. We disagree.

The determination of whether a child is competent to testify is a matter within the sound discretion of the trial court. *See State v. Ward*, 118 N.C. App. 389, 455 S.E.2d 666 (1995). Moreover, "[t]he trial court's decision will not be reversed on appeal unless it is shown that it could not have been the result of a reasoned decision." *Id.* at 394, 455 S.E.2d at 669.

Because the defendant has failed to show that the trial court's decision was not the result of a reasoned decision, we will not disturb the trial court's finding that the child in this case was unavailable to testify. *See State v. Chandler*, 324 N.C. 172, 376 S.E.2d 728 (1989) (holding that a four-year-old victim who was unable to respond to questions because of fear was "unavailable" within meaning of hearsay rule and thus, her testimony from defendant's first trial was admissible in a subsequent retrial).

Next, the defendant challenges the trial court's admission of these hearsay statements under the N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) catchall exception.

This catchall exception permits the admission of statements having equivalent guarantees of trustworthiness where a declarant is unavailable. To determine whether the subject statements were admissible under the catchall exception, the trial court conducted a six-step inquiry, under the guidance of *State v. Swindler*, 339 N.C. 469, 450 S.E.2d 907 (1994), and found that:

(1) The State gave the defense sufficient notice of intent of its use of these statements;

(2) These statements were not specifically covered by any of the other exceptions to the hearsay rule under Rules 803 and 804;

(3) These statements were trustworthy;

(4) The proffered statements were offered as evidence of a material fact;

(5) The statements were more probative on the point for which they were offered than any other evidence which the proponent could accrue through reasonable efforts;

(6) The general purpose of these rules and the best interest of justice would be served by the admission of these statements into evidence.

*See State v. Swindler*, 339 N.C. 469, 473-74, 450 S.E.2d 907, 910 (1994); *see also State v. Wagoner*, 131 N.C. App. 285, 506 S.E.2d 738, 740 (1998); N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (1992).

Reviewing the record on appeal, we find evidence to support the trial court's assessment as to each of these particular findings which in turn supports the trial court's decision to allow the hearsay statements under the Rule 804(b)(5) catchall exception.

[3] Nonetheless, we further address the issue of whether thé admission of these hearsay statements violated the defendant's constitutional right to confront the declarant child.

"The Confrontation Clauses in the Sixth Amendment to the United States Constitution and Article I Section 23 of the North Carolina Constitution prohibit the State from introducing hearsay evidence in a criminal trial unless the State: (1) demonstrates the necessity for using such testimony, and (2) establishes the inherent trustworthiness of the original declaration." *State v. Waddell*, 130 N.C. App. 488, 494, 504 S.E.2d 84, 88 (1998).

"In the circumstance where the State's case depends in the main upon the child sex abuse victim's statements and the child is incompetent to testify '[t]he unavailability of the victim due to incompetency and the evidentiary importance of the victim's statements adequately demonstrate the necessity prong of this test." *Waddell*, 130 N.C. App. at 494, 504 S.E.2d at 88. (quoting *State v. Gregory*, 78 N.C. App. 565, 568, 338 S.E.2d 110, 112 (1985)). In the subject case, because the unavailability of the child was due to her incompetency, it was necessary to allow the testimonies of the school counselor,

police detective, and social worker. Thus, the necessity requirement was satisfied in the case *sub judice*.

In evaluating whether the hearsay testimony meets the circumstantial guarantees of trustworthiness, the trial court should consider the following factors:

(1) assurances of the declarant's personal knowledge of the underlying event, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaning of cross examination.

*State v. Triplet*, 316 N.C. 1, 10-11, 340 S.E.2d 736, 742 (1986).

Our review of the record in this case, shows that the trial court's determination that the subject hearsay statements satisfied the circumstantial guarantees of trustworthiness was supported by evidence showing that the child—as the victim—had personal knowledge of the underlying incident at issue in this case. Further, there was no evidence in the record that the child had any motive for lying, nor that she had ever recanted these statements. Additionally, it was not practical for the child to testify in this case because of her incompetency.

Moreover, the trial court's finding of incompetence under these circumstances did not as a matter of law invalidate the child's prior statements made with personal knowledge. *See State v. Rogers*, 109 N.C. App. 491, 498, 428 S.E.2d 220, 224, *cert. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1102, 114 S. Ct. 1875, 128 L. Ed.2d 495 (1994) (holding that the trial court's finding of incompetence is not "inconsistent as a matter of law with a finding that the child may nevertheless be qualified as a declarant out of court to relate truthfully personal information and belief"). Accordingly, we conclude that the second requirement of trustworthiness has also been satisfied.

In sum, since the trial court's admission of these hearsay statements did not infringe upon the defendant's constitutional right to confront witnesses, we reject the defendant's third assignment of error.

## IV.

[4] Finally, the defendant argues that his constitutional right to effective assistance of counsel at trial was violated because his trial attor-

ney failed to object to the social worker's testimony that the child's statements were believable. In particular, the social worker stated during cross examination: "I wouldn't expect a child to make a statement that [her] daddy put [his penis] in [her] mouth because a child wants to protect the people that she's close to and the people that take care of her. So I wouldn't have expected her to say it if it didn't happen."

To establish ineffective assistance of counsel, the defendant must satisfy a two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed.2d 674 (1984). *See State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985); *State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998). Under this test, the defendant must show that: (1) the counsel's performance fell below an objective standard of reasonableness as defined by professional norms and (2) the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error. See *Lee*, 348 N.C. at 491, 501 S.E.2d at 345.

Under Rules 405 and 608 of the North Carolina Rules of Evidence, an expert witness may not testify that the prosecuting witness in a sexual abuse trial is believable, *see State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986), nor that the child is lying about the alleged sexual assault, *see State v. Heath*, 316 N.C. 337, 341 S.E.2d 565 (1986). However, an expert may testify as to the "characteristics of sexually abused children" and may express an opinion as to whether the characteristics of the child at issue are "consistent with" the characteristics of sexually abused children. *See State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 366 (1987); *State v. Hammond*, 112 N.C. App. 454, 461, 435 S.E.2d 798, 802 (1993) (an expert may express her opinion as to whether the victim exhibited characteristics "similar" to an abused child), disc. review denied, 335 N.C. 562, 441 S.E.2d 126 (1994)).

In the instant case, the first part of the social worker's statements that "I wouldn't expect a child to make a statement that [her] daddy put [his penis] in [her] mouth because a child wants to protect the people that she's close to and the people that take care of her" is merely the social worker's opinion that abused children generally do not falsely accuse their parents—which is permissible testimony of the characteristics of abused children. The last part of the social worker's statements that she "wouldn't have expected her to say it if it didn't happen" constitutes impermissible expert testimony as to the credibility of this particular child. *See State v. Oliver*, 85 N.C. App. 1,

11, 354 S.E.2d 527, 533 (holding that an expert may testify as to "the general credibility of children who report sexual abuse," but not as to "the credibility of the specific victim").

However, under certain circumstances, "otherwise inadmissible evidence may be admissible if the door has been opened by the opposing party's cross examination of the witness." *State v. Baymon,* 336 N.C. 748, 752, 446 S.E.2d 1, 3 (1994). " 'Opening the door refers to the principle that where one party introduces evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence would be incompetent or irrelevant had it been offered initially.' " *Id.* at 752-53, 446 S.E.2d at 3 (quoting *State v. Sexton,* 336 N.C. 321, 360, 444 S.E.2d 879, 901 (1994)).

In the case at hand, the testimony at issue was given by the social worker in response to the defense counsel's questions. Specifically, the following colloquy took place at trial:

Q. You would not expect a five year old to say someone put their dink-a-link in her mouth unless it had happened.

A. No. Because it is a very shameful thing for a child.

Q. Unless they had experience before?

A. I wouldn't expect a child to make a statement that their daddy put it in their mouth because a child wants to protect the people that she's close to and the people that take care of her. So. I wouldn't have expected her to say that if it didn't happen.

Q. And unless they have experienced the dink-a-link in their mouth before or seen somebody put a dink-a-link in somebody's mouth before they wouldn't even know it ever went on any way, would they?

Through this line of questioning, the defense counsel attempted to show that the child's sexual knowledge resulted from a prior incident of sexual abuse occurring at her mother's home as oppose to the incident for which the defendant was being tried. Hence, the defense counsel opened the door to the social worker's testimony as to the child's statements being believable.

We, therefore, hold that the social worker's testimony was admissible. Consequently, the defendant's assertion that his counsel's failure to object to such testimony constituted ineffective assistance of

counsel is without merit. *See Lee*, 348 N.C. at 492, 501 S.E.2d at 345 (stating that "[t]he first part of the *Strickland* test is not satisfied where defendant cannot even establish that an error occurred").

Having summarily determined that the defendant's remaining assignments of error lack merit, we conclude that the defendant was given a fair trial, free of prejudicial error.

No error.

Judge GREENE concurs in the result in a separate opinion.

Judge MARTIN concurs.

Judge GREENE concurring in the result.

Although I concur in the result reached by the majority, I must write separately because I do not agree that our inquiry into whether Defendant received effective assistance of counsel ends with the determination that defense counsel "opened the door" to the admissibility of expert testimony as to the credibility of the child victim in this case. To the contrary, I believe opening the door to otherwise inadmissible testimony could be as indicative of ineffective assistance of counsel as the failure to object to its admission.

The majority holds, and I agree, that Defendant's trial counsel "opened the door" to admission of this statement by asking the State's expert witness whether she would "expect a five year old to say someone put their dink-a-link in her mouth unless . . . they had experience[d] [it] before." I do not believe, however, that our inquiry ends there. We must further determine whether defense counsel's elicitation of this statement constitutes ineffective assistance of counsel.

A defendant's constitutional right to counsel includes the right to effective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985). To show that counsel was ineffective, a defendant must satisfy a two-part test. *Id.* at 562, 324 S.E.2d at 248.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

This requires showing that counsel's error[s] were so serious as to deprive the defendant of a fair trial . . . .

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). "[E]very effort [should] be made to eliminate the distorting effects of hindsight" in reviewing defense counsel's effectiveness "and to evaluate the conduct from counsel's perspective at the time." *State v. Mason*, 337 N.C. 165, 177-78, 446 S.E.2d 58, 65 (1994) (quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694). There is a "strong presumption" that, under the circumstances, the challenged action of defense counsel was sound trial strategy rather than ineffective assistance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694.

In this case, my review of the record reveals defense counsel herein was attempting to elicit favorable information from the expert when asking whether she would expect a five-year-old to make allegations of sexual abuse "[u]nless they had experience[d] [it] before." There was evidence before the jury that Defendant and the child's mother maintained separate residences, and that the child had previously been sexually abused while in her mother's care. Testimony of several witnesses, including experts, revealed that the child had told the same story of abuse by Defendant to each of them, and the physical evidence revealed that the child had been sexually abused. Defense counsel was therefore proceeding on the theory that the child was, at best, describing sexual acts committed by adults other than Defendant. Because the evidence supported this reasonable trial strategy, Defendant has not overcome the strong presumption that defense counsel acted reasonably in attempting to elicit this information. Accordingly, I agree with the majority that Defendant was not denied effective assistance of counsel.

I also write separately to address the majority's statement that the Confrontation Clause prohibits "the State from introducing hearsay evidence in a criminal trial unless the State: (1) demonstrates the necessity for using such testimony, and (2) establishes the inherent trustworthiness of the original declaration." 134 N.C. App. 379, 385, 517 S.E.2d 677, —— (1999). Our Supreme Court has explicitly held: "[T]he Confrontation Clause of the North Carolina Constitution *does not require a showing or finding of necessity* before hearsay testimony may properly be admitted under a firmly rooted exception to the hearsay rule." *State v. Jackson*, 348 N.C. 644, 647, 503 S.E.2d 101, 103 (1998) (emphasis added). Necessity is a prerequisite to

**HOLSHOUSER v. SHANER HOTEL GRP. PROPS. ONE**

[134 N.C. App. 391 (1999)]

admission of hearsay testimony *only* when the testimony is offered under one of the "residual" hearsay exceptions (*i.e.*, Rule 803(24) and Rule 804(b)(5) of our Rules of Evidence). *See id.* at 652, 503 S.E.2d at 106. I agree with the majority that necessity was a prerequisite to admission of the hearsay testimony in this case because the hearsay testimony at issue was offered under the "residual" hearsay exceptions rather than a "firmly rooted" exception.