IN RE: M.D.L., J.D.L., and K.D.L. Minor Children
No. COA07-249
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication
Michael E. Casterline, for Respondent-appellant.
Lauren Vaughan, for Petitioner-appellee.
Holly M. Groce, for Guardian ad Litem-appellee.
WYNN, Judge.
Respondent-father T.D.L. appeals from adjudicatory and dispositional orders entered by the trial court regarding his minor children, M.D.L., K.D.L., and J.D.L. Because the record shows that the trial court's finding of facts are supported by clear, cogent, and convincing evidence, and the findings of fact support the conclusions of law, we affirm the trial court's orders.
The relevant facts show that Respondent-mother A.H. gave birth to M.D.L. in 2001, while married to Respondent-father. Respondent-father obtained full custody of the child after the couple's separation. He later married Respondent-mother N.P.L., who gave birth to J.D.L. and K.D.L. in 2004 and 2005. On 6 March 2006, the Iredell County Department of Social Services obtained non-secure custody of M.D.L. upon filing a juvenile petition alleging that she was abused, neglected, and dependent. The petition claimed that M.D.L. had disclosed acts of sexual abuse by Respondent-father to two social workers and a third witness on 6 March 2006, and that she had made similar statements to her day care teacher on 30 January 2006. DSS further alleged that M.D.L. had come to day care with a scratch on her face and a bruise under her eye on 2 March 2006, which she attributed to N.P.L. N.P.L. told the social worker that she did not believe M.D.L. had been sexually abused, or that the child needed protection from Respondent-father.
Also, DSS obtained non-secure custody of J.D.L. and K.D.L. and filed petitions on 8 March 2006, based on allegations of neglect and dependency. The petitions asserted that J.D.L. and K.D.L. were living in the home of M.D.L.'s alleged abuser. The petition further alleged that N.P.L. was instructed not to allow Respondent-father to supervise J.D.L. and K.D.L.; however, she advised DSS that he was the only available caretaker for the children while she was at work.
Prior to the adjudicatory hearing, DSS filed a motion to introduce hearsay statements made by M.D.L. regarding acts of sexual abuse by Respondent-father, pursuant to the residual hearsay exception.[1] The trial court determined that DSS had provided Respondent-father with proper notice, that the statements were not covered by any of the enumerated exceptions to the hearsay rule, and that the statements were material to an issue at adjudication. It then considered whether M.D.L.'s statements were more probative on the allegations of sexual abuse than any other evidence which DSS could obtain by reasonable efforts. DSS conceded that the child was "available" as a witness under Rule 803, but offered the expert opinion of child psychologist Dr. James Powell, who performed a child mental health evaluation upon M.D.L.
Dr. Powell testified that M.D.L. would be unlikely to disclose any information about Respondent-father's actions in the context of a judicial proceeding and would be unable to give truthful testimony. Moreover, he averred that "talking about the sexual abuse would be very stressful for her and damaging to her emotional health and her ability to function." Dr. Powell opined that, to a reasonable degree of medical certainty, "[s]he would be damaged by trying to give testimony in this case." After announcing findings consistent with Dr. Powell's testimony, the court concluded that M.D.L.'s hearsay statements "would be the most probative evidence which the Department of Social Services can procure through reasonable efforts at this time."
The trial court then received evidence on the remaining issues on whether M.D.L.'s hearsay statements bore sufficient indicia of trustworthiness and whether the interests of justice would be served by admitting her statements into evidence. The trial court heard testimony from Adrian Studevent, Stephanie Fields, LoriDavis, Frieda Smith, and Dr. Powell regarding the circumstances under which M.D.L. made the statements.
After reviewing the statements M.D.L. made to the various witnesses, the trial court concluded that the statements were admissible under the residual hearsay exception. The trial court reiterated its prior findings that (1) DSS provided proper notice of its intent to introduce M.D.L.'s statements; (2) the statements not covered by another hearsay exception; (3) the statements were material; and (4) the statements were more probative than any other evidence available to DSS through reasonable means. In support of finding (4), the trial court found that five-year-old M.D.L. was available as a witness but would suffer damage to her "mental and physical health if she was forced to testify in this matter[.]" The trial court found that M.D.L.'s hearsay statements were trustworthy, and that the interests of justice would be served by admitting them into evidence.
In assessing the trustworthiness of the statements, the trial court found that M.D.L. had personal knowledge of the events at issue, and that she made the statements "at times and under circumstances when [she] had no reason to lie or to fabricate the statements, but her motivation to speak the truth about these matters was great." The trial court took account of M.D.L.'s interview at the Dove House on 30 January 2006, when she "refused to discuss the matters . . . and stated that her vagina was hurt because she had fallen." Finally, the trial court found that her statements were corroborated by the testimony of the several witnesses. In reaching its conclusion "[t]hat the interests of justice would be best served by allowing the admission of the proffered statements[,]" the trial court balanced the constitutional rights of Respondents as parents against the trustworthiness of the statements and the trauma faced by M.D.L. if forced to testify against her father, stepmother, and mother. The trial court entered an "Order Allowing Hearsay Statements of the Minor Child" on 21 September 2006.
The trial court proceeded with the adjudicatory hearing. DSS called no further witnesses but tendered Dr. Powell's child mental health evaluation of M.D.L. Respondents offered no evidence to rebut DSS's evidence. The trial court took judicial notice of its 20 April 2006 order finding that N.P.L. had violated a non-secure custody order by allowing Respondent-father access to K.D.L. and J.D.L.
The trial court entered an adjudication order on 21 September 2006, finding M.D.L. to be an abused, neglected, and dependent juvenile. The trial court specifically found that Respondent-father "has inappropriately touched and rubbed the vaginal area of the minor child[.]" The trial court adjudicated K.D.L. and J.D.L. neglected and dependent juveniles. In support of these adjudications, the trial court found that Respondent-mother N.P.L. had violated the trial court's 14 March 2006 custody order by allowing Respondent-father unsupervised access to the children. The trial court included its adjudication order that respondent-mother A.H. was a non-offending parent. The trial court held a separate disposition hearing on 1 November 2006, and entered a disposition order on 30 November 2006, awarding DSS legal and physical custody of the minor children and established a placement plan of reunification with a non-offending parent for M.D.L., and a plan of reunification with a parent for J.D.L. and K.D.L. The trial court granted each parent five hours of weekly supervised visitation but ordered that Respondent-father have no visitation with M.D.L. Respondent-father was ordered to comply with his family services agreement; specifically, to obtain a sexual abuse screening assessment and psychological evaluation.
Respondent-father appeals contending that the trial court erred by: (I) admitting the minor child's hearsay statement pursuant to the residual hearsay provision and by considering the best interest of the minor child when determining whether the hearsay should be admitted; (II) adjudicating M.D.L. as an abused juvenile absent competent evidence that he had inappropriate sexual contact with the minor child; and (III) requiring him to obtain a sex abuse assessment.

I.
First, Respondent-father contends that the trial court erred by admitting the minor child's statements pursuant to the residual hearsay provision. Specifically, Respondent-father avers that the trial improperly focused its analysis on the best interest of M.D.L. rather than on the indicia of trustworthiness surrounding her statements. We disagree. Initially, we note that Respondent-father mis-states the standard of review applicable to his assignment of error as de novo. See N.C.R. App. P. 28(b)(6). To the contrary, we review the trial court's decision to admit hearsay evidence under Rule 803(24) only for abuse of discretion. State v. Smith, 315 N.C. 76, 97, 337 S.E.2d 833, 847 (1985).
Using the analytical framework established by the North Carolina Supreme Court in Smith for determining the admissibility of hearsay under Rule 803(24), the trial court considered, seriatim, the following factors: (1) Whether DSS gave proper notice of its intention to introduce M.L.'s statements; (2) Whether the statements were covered by another exception to the hearsay rule;
(3) Whether the statements were trustworthy 4) Whether the statements were material; (5) Whether the statements were "more probative on the issue than any other evidence which the proponent can procure through reasonable efforts[;]" and (6) Whether the interests of justice would be served by admitting the statements.
Id. at 92-97, 337 S.E.2d at 844-46.
Respondent-father confines his appeal only to the factor we have enumerated as (5), whether the statements had circumstantial guarantees of trustworthiness equivalent to those present in an established exception to the hearsay rule. An assessment of this factor requires the trial court to consider the following:
(1) whether the declarant had personal knowledge of the underlying events,
(2) whether the declarant is motivated to speak the truth or otherwise,
(3) whether the declarant has ever recanted the statement, and
(4) whether the declarant is available at trial for meaningful cross-examination.
State v. Valentine, 357 N.C. 512, 518, 591 S.E.2d 846, 852-53 (2003) (citing State v. King, 353 N.C. 457, 479, 546 S.E.2d 575, 592 (2001), cert. denied, 534 U.S. 1147, 151 L. Ed. 2d 1002 (2002)). Even absent particularized findings by the trial court on each of these issues we will not disturb a decision to admit hearsay under Rule 803(24) where the record reveals the requisite indicia of reliability. Id. (citing State v. Daughtry, 340 N.C. 488, 459 S.E.2d 747 (1995),cert. denied, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996); State v. Swindler, 339 N.C. 469, 474-75, 450 S.E.2d 907, 911 (1994)). In all cases, "the peculiar factual context within which the statement was made will determine its trustworthiness." Smith, 315 N.C. at 94, 337 S.E.2d at 845.
We believe the trial court made sufficient findings to reflect a proper consideration of the circumstantial guarantees of trustworthiness surrounding M.D.L.'s statements to her teachers, social workers, Smith, and Dr. Powell.[2] The trial court took into account the child's age and her inability to testify without suffering significant mental and emotional trauma. The trial court expressly found that M.D.L.'s statements involved matters of which she had first-hand knowledge and "were made at times and under circumstances when [she] had no reason to lie or fabricate the statements[,]" but was motivated to tell the truth.
Moreover, the trial court considered M.D.L.'s contradictory statement at the Dove House on 30 January 2006, in which she claimed to have hurt her vagina by falling. Although the trial court did not make individualized findings as to each of M.D.L.'s statements on 30 January 2006, 26 February 2006, 6 March 2006, 8 March 2006, 17 May 2006, and 13 June 2006, we find the general consistency of these statements, as well as M.D.L.'s depictions of Respondent-father's conduct by mimicry and through the use of anatomical dolls, sufficient to support a finding of trustworthiness under Rule 803(24). State v. Wagoner, 131 N.C. App. 285, 290, 506 S.E.2d 738, 741 (1998), disc. review denied, 350 N.C. 105, 533 S.E.2d 476 (1999); see also State v. Pretty, 134 N.C. App. 379, 385-86, 517 S.E.2d 677, 682-83, disc. review denied and appeal dismissed, 351 N.C. 117, 540 S.E.2d 745 (1999).
Accordingly, we hold the trial court did not abuse its discretion by admitting the minor child's statements.

II.
Respondent-father next contends that the trial court erred by finding and concluding that M.D.L. was an abused juvenile, absent competent evidence that he had inappropriate sexual contact with the child. Specifically, Respondent-father states that "[a]bsent the impermissible hearsay," he contends, "there is no other evidence to support" the trial court's findings. Because we have upheld the admissibility of M.D.L.'s statements, Respondent-father's argument is without merit.
Under Section 7B-101(1)(d) of the North Carolina General Statutes, a juvenile is deemed to be abused if a parent commits any of several listed crimes upon the juvenile, including the crime of taking indecent liberties with a minor under section 14-202.1 of the North Carolina General Statutes. The trial court's findings of fact at adjudication must be supported by clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2006).
Here, the trial court found, inter alia, "[t]hat the Respondent Father . . . has inappropriately touched and rubbed the vaginal area of the minor child, M.[D.]L." This finding was supported by ample testimony of Studevent, Smith, Davis, and Dr. Powell, who recounted M.D.L.'s statements and actions on 20 January 2006, 26 February 2006, 6 March 2006, and 17 May 2006, and 13 June 2006. See In re Morales, 159 N.C. App. 429, 434, 583 S.E.2d 692, 695 (2003). Moreover, the finding M.D.L.'s father inappropriately touched and rubbed her vaginal area was sufficient to support the conclusion that she was an abused juvenile under N.C. Gen. Stat. § 7B-101(1)(d).[3]
Accordingly, we overrule this assignment of error.

III.
Last, Respondent-father challenges the trial court's dispositional order requiring him to obtain a sex abuse assessment, on the ground that DSS failed to adduce admissible evidence that he sexually abused M.D.L. We disagree.
Respondent-father acknowledges the trial court's authority to order such treatment for the purpose of addressing "behaviors or conditions that led to or contributed to the juvenile's adjudication[,]" N.C. Gen. Stat. § 7B-904(c) (2006), but insists that the underlying adjudication was invalid.
Having affirmed M.D.L.'s adjudication as an abused juvenile based on the trial court's finding inappropriate sexual contact by Respondent-father, we find no error by the trial court in ordering him to obtain a sex abuse assessment. We note the trial court heard evidence at disposition that Respondent-father entered into a home family service agreement with DSS on 7 April 2006, which required him to "complete a sex abuse screening and assessment" and comply with any recommendations.
The record includes additional assignments of error not addressed in Respondent-father's appellant's brief. Pursuant to Rule 28(b)(6), they are deemed abandoned.
Affirmed.
Judges CALABRIA and McCULLOUGH, concur.
Report per Rule 30(e).
NOTES
[1] In order to avoid the need for multiple appearances by the affected witnesses, the court combined a hearing on the admissibility of M.D.L.'s statements with the adjudicatory hearing.
[2] All M.D.L.'s statements to her teachers, social workers, family friend, and Dr. Powell indicated that Respondent-father inappropriately digitally penetrated and/or fondled the minor child.
[3] We note that Respondent-father assigns error to additional findings of fact which list things M.D.L. "stated" or "told" others regarding Respondent-father's actions. A court's recitation of a declarant's statement does not constitute a finding of fact, absent a determination by the court of the truth of her assertion. In re Green, 67 N.C. App. 501, 505, n.1, 313 S.E.2d 193, 195, n.1 (1984). However, the trial court made another finding of fact that supports its conclusion, therefore, this error was harmless.